# MATTER OF GOLDESHTEIN

## In Deportation Proceedings

### A-26719010

### *Decided by Board August 26, 1991*

(1) Structuring any transaction with one or more domestic financial institutions for the purpose of evading the reporting requirements of the financial institution(s) in violation of 31 U.S.C. § 5324(3) (1988) entails a deliberate deception and impairment of governmental functions; thus, it is inherently fraudulent and is a crime involving moral turpitude.

(2) A conspiracy to commit an offense involves moral turpitude when the underlying substantive offense is a crime involving moral turpitude.

(3) An application for discretionary relief, including a waiver of inadmissibility under section 212(h) of the Immigration and Nationality Act, 8 U.S.C. § 1182(h) (1988), may be denied in the exercise of discretion without express rulings on the question of statutory eligibility.

CHARGE:

Order: Act of 1952—Sec. 241(a)(4)[(A)] [8 U.S.C. § 1251(a)(4)[(A)]]—Crime involving moral turpitude

Sec. 241(a)(4)(B) [8 U.S.C. § 1251(a)(4)(B)]—Convicted of aggravated felony

ON BEHALF OF RESPONDENT:
Brian Drew Perry, Sr., Esquire
P.O. Box 740622
New Orleans, Louisiana 70174

ON BEHALF OF SERVICE:
Joyce L. Richard
General Attorney

BY: Milhollan, Chairman; Dunne, Morris, Vacca, and Heilman, Board Members

In a decision dated January 28, 1991, the immigration judge found the respondent deportable under section 241(a)(4)[(A)] of the Immigration and Nationality Act, 8 U.S.C. § 1251(a)(4)[(A)] (1988), for conviction of a crime involving moral turpitude, denied his request for a waiver under section 212(h) of the Act, 8 U.S.C. § 1182(h) (1988), and ordered him deported to Israel. The respondent has appealed from that decision. The appeal will be dismissed.

The respondent is a male native and citizen of Israel who entered the United States at Newark, New Jersey, on June 12, 1984, as a nonimmigrant. On May 30, 1985, the respondent's status was adjusted

to that of a lawful permanent resident. An Order to Show Cause and Notice of Hearing (Form I-221) dated August 20, 1990, alleges that on March 31, 1989, the respondent was convicted of conspiracy to violate the United States currency laws in violation of 18 U.S.C. § 371 (1988), for structuring financial transactions with domestic financial institutions to avoid currency reports in violation of 31 U.S.C. §§ 5324(3) and 5322(b) (1988), and of aiding and abetting in violation of 18 U.S.C. § 2 (1988). The respondent was charged with deportability under section 241(a)(4)[(A)] of the Act as an alien convicted of a crime involving moral turpitude, and under section 241(a)(4)(B) of the Act as an alien convicted of an aggravated felony. The immigration judge found deportability based only on conviction of a crime involving moral turpitude, and the Immigration and Naturalization Service has not pursued a finding of deportability based on section 241(a)(4)(B) on appeal. The immigration judge denied the respondent's request for a waiver under section 212(h) of the Act and ordered the respondent deported.

On appeal the respondent, through counsel, contends that he has not been convicted of a crime involving moral turpitude. He further asserts that the immigration judge abused his discretion in denying the respondent's request for a waiver under section 212(h) of the Act.

The respondent initially conceded deportability under section 241(a)(4)[(A)] of the Act for conviction of a crime involving moral turpitude, but he later challenged that charge of deportability.[1] The immigration judge considered the respondent's challenge to deportability on the merits and rejected it. We have reviewed the record de novo and conclude that the respondent is deportable under section 241(a)(4)[(A)] for conviction of a crime involving moral turpitude.[2]

---

[1] Section 241(a)(4)[(A)] provides as follows:

Any alien in the United States (including an alien crewman) shall, upon the order of the Attorney General, be deported who—

is convicted of a crime involving moral turpitude committed within five years after entry and either sentenced to confinement or confined therefor in a prison or corrective institution, for a year or more, or who at any time after entry is convicted of two crimes involving moral turpitude, not arising out of a single scheme of criminal misconduct, regardless of whether confined therefor and regardless of whether the convictions were in a single trial.

This section has been revised and redesignated as sections 241(a)(2)(A)(i) and (ii) of the Act by section 602(a) of the Immigration Act of 1990, Pub. L. No. 101-649, 104 Stat. 4978, 5079-80.

[2] The statutory requirement of a 1-year prison sentence has been met in this case. The respondent was sentenced to 40 months in prison on three separate counts to be served concurrently. The 5-year requirement has also been met. The respondent entered the United States on June 12, 1984. The conspiracy and underlying substantive acts to which he pleaded guilty on March 23, 1989, occurred from October 1986 until March

The conviction records contained in the record of proceedings indicate that the respondent pleaded guilty to counts 1, 7, and 9 of the second superseding indictment against him. Count 7 alleges that the respondent violated 31 U.S.C. §§ 5324(3) and 5322(b) (1988) and 18 U.S.C. § 2 (1988) in that he "knowingly, willfully, and for the purpose of evading the reporting requirements of 31 U.S.C. § 5313(a), structured, assisted in the structuring of, and attempted to structure and assist in the structuring of financial transactions with domestic financial institutions by purchasing or causing to be purchased 44 money orders, totalling approximately $46,748.00, each of which was in an amount of less than $10,000" all "as part of a pattern of illegal activity involving transactions exceeding $100,000.00 in a twelve-month period." Count 9 alleges violation of the same sections as count 7 based on six deposits totalling $32,675 in cash deposited in amounts of less than $10,000, which were also part of the pattern of illegal activity involving transactions exceeding $100,000 in a 12-month period. Count 1 alleges conspiracy under 18 U.S.C. § 371 (1988) based on violations of 31 U.S.C. §§ 5316(a)(1)(A), 5324(3), and 5322(b) (1988) and 31 C.F.R. §§ 103.22 and 103.23 (1989).

A useful description of the type of criminal "money laundering" scheme at issue in this case is set forth in *United States v. Scanio*, 900 F.2d 485 (2d Cir. 1990), and is repeated here for background purposes:

> Under the Bank Secrecy Act of 1970 ... and the regulations promulgated thereunder, financial institutions, including banks, are obligated to report currency transactions in excess of $10,000 to the government. *See* 31 U.S.C. § 5313(a) .... Since individuals engaging in sizeable cash transactions often are involved in criminal activity, reports filed pursuant to this requirement assist the government in its efforts to investigate and combat a wide range of criminal conduct. The government's attempts to collect this information have, however, been frustrated by persons who "structure" their currency transactions—*i.e.*, engage in multiple transactions each involving slightly under $10,000 as to avoid triggering the financial institutions' filing obligations.
>
> ... [P]rior to legislation specifically relating to structured transactions, enacted in 1986 and effective in January 1987, persons engaging in such transactions were prosecuted either for willfully causing a financial institution to fail to file a [Currency Transaction Report], *see* 18 U.S.C. § 2(b), for knowingly and willfully concealing a material fact from the government, 18 U.S.C. § 1001, or for conspiracy, 18 U.S.C. § 371....
>
> ....
>
> In 1986, confronted with conflicting case law regarding prosecutions for structuring transactions, Congress unequivocally sought to enhance the arsenal of prosecutors in their battle against drug traffickers and money launderers .... Thus,

---

18, 1988. *See Okabe v. INS*, 671 F.2d 863, 864 n.2 (5th Cir. 1982). The issue on appeal with respect to deportability is whether the respondent's conviction was for a "crime involving moral turpitude."

as part of the Anti-Drug Abuse Act of 1986, Congress enacted 31 U.S.C. § 5324 which provides that:

> No person shall for the purpose of evading the reporting requirements of section 5313(a) with respect to such transaction—
>
> (1) cause or attempt to cause a domestic financial institution to fail to file a report required under section 5313(a);
>
> (2) cause or attempt to cause a domestic financial institution to file a report required under section 531 3(a) that contains a material omission or misstatement of fact; or
>
> (3) *structure or assist in structuring, or attempt to structure or assist in structuring, any transaction with one or more domestic financial institutions.*

31 U.S.C. § 5324 (Supp. V 1987) (emphasis added); *see* 31 C.F.R. § 103.11(n) (1989) (defining "structuring"). Criminal penalties for "willful[]" violations of § 5324 are set out in 31 U.S.C. § 5322(a) (Supp. V 1987).

*United States v. Scanio, supra,* at 487-89 (citations omitted).

The court in *Scanio* found that neither section 5324(3) nor its penalty provision at section 5322(a) requires proof that the defendant know that structuring is unlawful. *United States v. Scanio, supra,* at 489, 490. The court stated that

> Scanio was not prosecuted for having failed to comply with an obscure reporting requirement; he was charged with having intentionally structured a currency transaction with the explicit purpose of evading what he knew to be the bank's legal duty to file [Currency Transaction Reports] for all transactions exceeding $10,000. Scanio engaged in affirmative conduct and demonstrated an awareness of the legal framework relative to currency transactions which, it is reasonable to conclude, should have alerted him to the consequences of his conduct.

*Id.* at 490. The court further reasoned that

> § 5324(3) prohibits purposeful conduct aimed at defeating the government's right to information. Where a defendant is charged with violating an obscure reporting provision, proof that (s)he was specifically aware of the reporting provision is necessary to establish criminal intent. With respect to a prosecution for structuring, however, the requirement that a defendant be shown to have acted with a "bad purpose" is satisfied by proof that (s)he (1) knew that the bank was legally obligated to report currency transactions exceeding $10,000 and (2) intended to deprive the government of information to which it is entitled.

*Id.* at 491.

The two circuit courts which have addressed in published decisions since *Scanio* the question whether section 5324(3) requires proof that the defendant knew structuring is unlawful have followed the reasoning and result of *Scanio. United States v. Dashney,* 937 F.2d 532 (10th Cir. 1991); *United States v. Hoyland,* 914 F.2d 1125 (9th Cir. 1990).

We find that violation of 31 U.S.C. § 5324(3) (1988) is properly characterized as a crime involving moral turpitude. "It is the inherent nature of the crime as defined by statute and interpreted by the courts and as limited and described by the record of conviction which determines whether the offense is one involving moral turpitude."

*Matter of Short,* 20 I&N Dec. 136, at 137 (BIA 1989); *see also Okabe v. INS, supra.* The most frequently cited definition of moral turpitude was given by the Supreme Court in *Jordan v. De George,* 341 U.S. 223 (1951), where it was stated:

> Whatever else the phrase "crime involving moral turpitude" may mean in peripheral cases, the decided cases make it plain that crimes in which fraud was an ingredient have always been regarded as involving moral turpitude. . . . Fraud is the touchstone by which this case should be judged. The phrase "crime involving moral turpitude" has without exception been construed to embrace fraudulent conduct.

*Id.* at 232. "[W]here fraud is inherent in an offense, it is not necessary that the statute prohibiting it include the usual phraseology concerning fraud in order for it to involve moral turpitude." *Matter of Flores,* 17 I&N Dec. 225, 228 (BIA 1980). Consistent with the reasoning in *Scanio,* we find that although violation of section 5324(3) does not require knowledge that structuring is unlawful, it nonetheless requires that the structuring be "for the purpose of evading the reporting requirements," 31 U.S.C. § 5324(3) (1988), which is "an affirmative act calculated to deceive the government and, therefore, [is] inherently fraudulent," *Matter of Flores, supra,* at 229. It involves conduct which "impair[s] or obstruct[s] an important function of a department of the government by defeating its efficiency or destroying the value of its lawful operations by deceit, graft, trickery, or dishonest means." *Id.*; *accord Matter of D-,* 9 I&N Dec. 605 (BIA 1962); *Matter of E-,* 9 I&N Dec. 421 (BIA 1961); *Matter of S-,* 2 I&N Dec. 225 (BIA 1944); *see also United States v. Scanio, supra,* at 491 (section "5324(3) prohibits purposeful conduct aimed at defeating the government's right to information"); *United States v. Hoyland, supra,* at 1129 ("Only the person who has a deliberate intention to frustrate the reporting by the banks is guilty of the offense."). Accordingly, we conclude that the respondent's conviction for the substantive offense of 31 U.S.C. § 5324(3) and its penalty under section 5322(b) is a crime involving moral turpitude. Moreover, as the respondent's conspiracy conviction under 18 U.S.C. § 371 is based in part on 31 U.S.C. §§ 5324(3) and 5322(b), we find that it also is a crime involving moral turpitude. A conspiracy to commit an offense involves moral turpitude when the underlying substantive offense is a crime involving moral turpitude. *See Matter of Bader,* 17 I&N Dec. 525 (BIA 1980); *Matter of McNaughton,* 16 I&N Dec. 569 (BIA 1978), *aff'd,* 612 F.2d 457 (9th Cir. 1980). We find it unnecessary to discuss whether the additional counts constitute crimes involving moral turpitude. Accordingly, we find that deportability under section 241(a)(4)[(A)] has been established by clear, unequivocal, and convincing evidence. *Woodby v. INS,* 385 U.S. 276 (1966); 8 C.F.R. § 242.14(a) (1991).

The respondent applied for a waiver under section 212(h) of the Act which provides that

[a]ny alien, who is excludable from the United States under paragraph (9), (10), or (12) of [section 212(a) of the Act] or paragraph (23) of such subsection as such paragraph relates to a single offense of simple possession of 30 grams or less of marihuana, who (A) is the spouse or child, including a minor unmarried adopted child, of a United States citizen, or of an alien lawfully admitted for permanent residence, or (B) has a son or daughter who is a United States citizen or an alien lawfully admitted for permanent residence, shall, if otherwise admissible, be issued a visa and admitted to the United States for permanent residence (1) if it shall be established to the satisfaction of the Attorney General that (A) the alien's exclusion would result in extreme hardship to the United States citizen or lawfully resident spouse, parent, or son or daughter of such alien, and (B) the admission to the United States of such alien would not be contrary to the national welfare, safety, or security of the United States; and (2) if the Attorney General, in his discretion, and pursuant to such terms, conditions, and procedures as he may by regulations prescribe, has consented to the alien's applying or reapplying for a visa and for admission to the United States.[3]

Although section 212(h) addresses the eligibility of an alien for admission into the United States, it is also available to an alien present in the United States who applies for adjustment of status under section 245 of the Act, 8 U.S.C. § 1255 (1988). *See Osuchukwu v. INS*, 744 F.2d 1136, 1139 (5th Cir. 1984); *Matter of Sanchez*, 17 I&N Dec. 218 (BIA 1980); *Matter of Shaughnessy*, 12 I&N Dec. 810 (BIA 1968).

In the present case the immigration judge found that "there may be extreme hardship in this particular case" but denied the waiver request as a matter of discretion. The immigration judge did not address whether the admission of the respondent to the United States would not be contrary to the national welfare, safety, or security of the United States. An application for discretionary relief, including a waiver under section 212(h), may be denied in the exercise of discretion without express rulings on the question of statutory eligibility. *See Silva v. Carter*, 326 F.2d 315, 320 (9th Cir. 1963), *cert. denied*, 377 U.S. 917 (1964); *cf. INS v. Rios-Pineda*, 471 U.S. 444, 449 (1985); *INS v. Bagamasbad*, 429 U.S. 24, 25 (1976).

The respondent contends in his Notice of Appeal (Form EOIR-26) that the immigration judge's discretionary denial of section 212(h) relief based on "the longevity of the crime" was an "abuse of discretion." In his brief on appeal the respondent discusses the standards for "extreme hardship," but, as to the discretionary denial notwithstanding statutory eligibility, the respondent states only that

---

[3] Section 212(h) was revised by section 601(a) of the Immigration Act of 1990, 104 Stat. at 5076-77. However, the revised provision applies to "individuals entering the United States on or after June 1, 1991." Section 601(e) of the Immigration Act of 1990, 104 Stat. at 5077.

the immigration judge's ruling was "arbitrary and capricious and is an abuse of discretion."

The respondent's nonspecific assertions are without merit. In exercising discretion the immigration judge carefully considered the respondent's claim that he did not know his actions were against the law. Based on the large amounts of money involved, the number of transactions completed by the respondent, the extended period of time over which the transactions occurred, and the fact that large amounts of cash were coming from Colombia, the immigration judge found that the respondent was without justification for failing to question the lawfulness of his conduct. The immigration judge's finding is reasonable and supported by the record. The respondent pleaded guilty under 31 U.S.C. § 5324(3) (1988) to knowingly and intentionally structuring numerous currency transactions for the explicit purpose of evading what he knew to be the financial institutions' legal duty to file Currency Transaction Reports for all transactions exceeding $10,000. As noted in *United States v. Scanio, supra*, the unwary bank customer is protected from conviction under 31 U.S.C. § 5324(3) by the requirement of proof that the defendant knew of, and intended to evade, the reporting provisions of the Bank Secrecy Act. *United States v. Scanio, supra*, at 491. The respondent here pleaded guilty to charges that reflect that he "engaged in affirmative conduct and demonstrated an awareness of the legal framework relative to currency transactions which, it is reasonable to conclude, should have alerted him to the consequences of his conduct." *Id.* at 490. It is well settled that the immigration judge and this Board cannot entertain a collateral attack on a judgment of conviction unless that judgment is void on its face and cannot go behind the judicial record to determine the guilt or innocence of the alien. *Matter of Fortis*, 14 I&N Dec. 576, 577 (BIA 1974); *see also Trench v. INS*, 783 F.2d 181 (10th Cir.), *cert. denied*, 479 U.S. 961 (1986); *Avila-Murrieta v. INS*, 762 F.2d 733 (9th Cir. 1985); *Zinnanti v. INS*, 651 F.2d 420 (5th Cir. 1981) (per curiam); *Chiaramonte v. INS*, 626 F.2d 1093 (2d Cir. 1980) (foreign conviction); *Longoria-Castenada v. INS*, 548 F.2d 233 (8th Cir.), *cert. denied*, 434 U.S. 853 (1977); *Aguilera-Enriquez v. INS*, 516 F.2d 565 (6th Cir. 1975), *cert. denied*, 423 U.S 1050 (1976); *Matter of Danesh*, 19 I&N Dec. 669 (BIA 1988); *Matter of Khalik*, 17 I&N Dec. 518 (BIA 1980). The immigration judge concluded that the respondent's offense was "very serious" and that the respondent failed to establish that he warranted a favorable exercise of discretion. We find that the immigration judge's decision was within his discretion and it will not be disturbed.

Accordingly, the appeal will be dismissed.

**ORDER:**     The appeal is dismissed.