Nir GOLDESHTEIN, Petitioner,

v.

**IMMIGRATION AND
NATURALIZATION SERVICE,**
Respondent.

Nos. 91–70573, 92–70228 and 92–70711.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 12, 1993.

Decided Oct. 13, 1993.

Bart Klein, Bernice Funk, Seattle, WA, for petitioner.

Anthony W. Norwood, Office of Immigration, Litigation, Civ. Div., Justice Dept., Washington, DC, for respondent.

Before: CANBY, WIGGINS and T.G. NELSON, Circuit Judges.

CANBY, Circuit Judge.

These consolidated cases present the question whether structuring financial transactions with domestic financial institutions to avoid currency reports, in violation of 31 U.S.C. §§ 5324(a)(3) and 5322(b), is a crime involving moral turpitude within the meaning of the Immigration and Nationality Act ("INA"). We hold that it is not. Accordingly, we grant the petition for review in No. 91–70573, reverse the decision of the Board of Immigration Appeals ("BIA"), and remand with instructions to terminate the deportation proceedings.[1]

## I. FACTUAL & PROCEDURAL BACKGROUND

Nir Goldeshtein is a native and citizen of Israel; he last entered the United States in June 1984. In December 1984, he married Zoe Lawton; she is a United States citizen. On May 30, 1985, on the basis of his marriage, Goldeshtein became a lawful permanent resident of the United States. In March 1989, Goldeshtein pleaded guilty to one count of conspiracy to violate federal currency laws, in violation of 18 U.S.C. § 371, and two counts of structuring financial transactions with domestic financial institutions to avoid currency reports, in violation of 31 U.S.C. §§ 5324(a)(3) and 5322(b) and 18 U.S.C. § 2. Goldeshtein was sentenced to concurrent forty-month prison terms on each count. He served his sentence and was released in February 1991.

Meanwhile, on August 20, 1990, the Immigration and Naturalization Service ("INS") instituted deportation proceedings against Goldeshtein. The INS alleged that Goldeshtein was deportable under section 241(a)(4) of the INA, 8 U.S.C. § 1251(a)(4) (1988), because he had been convicted of a crime involving moral turpitude within five years after entry and had been sentenced to prison for more than a year.[2] The INS further alleged that Goldeshtein was deportable under section 241(a)(4)(B) of the INA, 8 U.S.C. § 1251(a)(4)(B) (1988), because he had been convicted of an aggravated felony.[3] In October and November 1990, and January 1991, deportation hearings were held before an immigration judge ("IJ"). Goldeshtein admitted his convictions, but denied an allegation that the money involved in the offenses had come from drug sales. On January 28, 1991, the IJ ruled that Goldeshtein was deportable under section 241(a)(4) of the INA because the offense of structuring financial transactions to avoid currency reports was a crime involving moral turpitude. The IJ ruled, however, that the INS had failed to establish deportability under section 241(a)(4)(B) of the INA because the evidence was insufficient to prove that Goldeshtein's offense was drug-related. Finally, the IJ denied Goldeshtein's request for a discretionary waiver of deportation under section 212(h) of the INA. The IJ ordered Goldeshtein deported to Israel. Goldeshtein appealed to the BIA. In August 1991, the BIA affirmed the IJ's decision and dismissed the appeal. In September 1991, Goldeshtein filed a petition for review.

## II. ANALYSIS

### A. Statutory Definition of the Crime

 Goldeshtein contends that he is not deportable because structuring financial transactions to avoid currency reports does not constitute a crime involving moral turpi-

---

1. In the consolidated petitions for review, Nos. 92–70228 and 92–70711, Goldeshtein challenges the BIA's denial of his motions to reopen the deportation proceedings. In light of our decision concerning the first petition for review, we need not reach the issues raised in the subsequent petitions. Those petitions are dismissed as moot.

2. This provision is now codified at 8 U.S.C. § 1251(a)(2)(A)(i) (Supp. IV 1992).

3. This provision is now codified at 8 U.S.C. § 1251(a)(2)(A)(iii) (Supp. IV 1992).

tude within the meaning of 8 U.S.C. § 1251(a)(2)(A)(i) (Supp. IV 1992). We agree.[4]

 Our prior decisions have made it quite clear that the question whether a crime is one of moral turpitude must be answered categorically. "Whether a crime is one with intent to defraud as an element, thereby making it a crime involving moral turpitude, is determined by the statutory definition or by the nature of the crime not by the specific conduct that resulted in the conviction." *McNaughton v. INS*, 612 F.2d 457, 459 (9th Cir.1980); *see also United States ex rel. Robinson v. Day*, 51 F.2d 1022, 1022–23 (2d Cir.1931) ("Neither the immigration officials, nor we, may consider the circumstances under which the crime was in fact committed. When by its definition [the crime] does not necessarily involve moral turpitude, the alien cannot be deported because in the particular instance his conduct was immoral"). For a crime to involve moral turpitude within the meaning of the INA, the crime " 'must *necessarily* involve moral turpitude.' " *Chu Kong Yin*, 935 F.2d at 1003 (quoting *Tseung Chu v. Cornell*, 247 F.2d 929, 935 (9th Cir.), *cert. denied*, 355 U.S. 892, 78 S.Ct. 265, 2 L.Ed.2d 190 (1957)) (emphasis in *Tseung Chu*).

 The first question we must face, then, is whether, by its definition, the crime of structuring financial transactions with domestic financial institutions to avoid the filing of currency reports necessarily involves moral turpitude. The resolution of this question turns on whether evil intent—in this case intent to defraud—is an essential element of the crime. *See Hirsch v. INS*, 308 F.2d 562, 567 (9th Cir.1962) ("A crime that does not necessarily involve evil intent, such as intent

to defraud, is not necessarily a crime involving moral turpitude."); *see also Jordan v. De George*, 341 U.S. 223, 227, 71 S.Ct. 703, 706, 95 L.Ed. 886 (1951) (analyzing judicial definitions of moral turpitude and citing with approval the Second Circuit's statement that "fraud has ordinarily been the test to determine whether crimes not of the gravest character involve moral turpitude") (citing *United States ex rel. Berlandi v. Reimer*, 113 F.2d 429 (2d Cir.1940)).

 The statute under which Goldeshtein was convicted provides in pertinent part:

> No person shall for the purpose of evading the reporting requirements of section 5313(a) . . . with respect to such transaction—
>
> \* \* \* \* \* \*
>
> (3) structure or assist in structuring, or attempt to structure or assist in structuring, any transaction with one or more domestic financial institutions.

31 U.S.C. § 5324(a)(3) (1988).[5] The penalties for "willfully violating" this provision are set forth in 31 U.S.C. § 5322(b) (1988). Thus, the language of these statutes does not make intent to defraud the government an essential element of the offense.[6]

Indeed, in this circuit a defendant may be convicted of violating section 5324 without even having known that it is a crime to structure financial transactions to avoid currency reports. *United States v. Hoyland*, 914 F.2d 1125, 1128–29 (9th Cir.1990); *United States v. Ratzlaf*, 976 F.2d 1280, 1283–87 (9th Cir.1992), *cert. granted*, —— U.S. ——, 113 S.Ct. 1942, 123 L.Ed.2d 648 (1993). Thus, in *Hoyland*, we upheld the conviction

---

4. Whether a statute defines a crime involving moral turpitude is a question of law, *United States v. Chu Kong Yin*, 935 F.2d 990, 1003 (9th Cir.1991), which we review de novo, *Abedini v. INS*, 971 F.2d 188, 190–91 (9th Cir.1992).

5. Pursuant to 31 U.S.C. § 5313(a) (1988) and 31 C.F.R. § 103.22 (1992), financial institutions must report currency transactions that involve more than $10,000.

6. Goldeshtein also pleaded guilty to conspiracy to violate 31 U.S.C. §§ 5322(b) and 5324(a)(3). The conspiracy conviction, however, does not

form an independent basis for the charge of deportability; a conspiracy to commit an offense involves moral turpitude only when the underlying substantive offense is a crime involving moral turpitude. *McNaughton*, 612 F.2d at 459. Citing this precedent, the BIA ruled that Goldeshtein's conviction for conspiracy would be considered a crime involving moral turpitude only if the underlying violations of 31 U.S.C. §§ 5322(b) and 5324(3) were such crimes. *Matter of Goldeshtein*, Interim Dec. No. 3158, slip op. at 6–7 (BIA Aug. 26, 1991). Accordingly, we consider only whether these substantive offenses constitute crimes involving moral turpitude.

even though Hoyland contended that he was unaware that structuring had been criminalized by Congress.[7] We recognize that the Supreme Court will be reviewing the scienter issue in *Ratzlaf*, but even if that Court decides that the crime of structuring currency transactions includes an element of knowledge of illegality, it would not affect our conclusion on the issue of moral turpitude. As we have pointed out, section 5324 requires no intent to defraud the government (or the financial institutions) of anything. It does not require any false statements to be made or used. The statute requires only structuring to avoid a reporting requirement. That act is not inherently fraudulent. *See United States v. Varbel*, 780 F.2d 758, 762 (9th Cir. 1986) (prior to time Congress explicitly proscribed structuring, act of structuring could not support conviction as wire fraud). If the Supreme Court were to add a requirement of scienter, that construction would not of itself convert the crime into one of moral turpitude. A crime that involves no element of fraud is not made fraudulent by the mere fact that the violator knew of the illegality. Because "evil intent, such as an intent to defraud" is not necessarily an element of the crime of which Goldeshtein was convicted, and his offense is not of the gravest character, we conclude that this crime does not involve moral turpitude. *Hirsch*, 308 F.2d at 567; *see Chu Kong Yin*, 935 F.2d at 1003; *McNaughton*, 612 F.2d at 459; *Tseung Chu*, 247 F.2d at 935; *Robinson*, 51 F.2d at 1022–23.

The INS argues that evil intent exists if a conviction requires proof that a defendant did a forbidden act "willfully." This court previously has rejected this argument. *See Hirsch*, 308 F.2d at 567 (conviction for knowingly and willfully making false statements in a matter before a federal agency was not a crime of moral turpitude because the statute did not require " 'that the Government prove that the defendant in fact had an evil intent[; t]he word "wilful" means no more than that the forbidden act is done deliberately and with knowledge' ") (quoting *Neely v. United States*, 300 F.2d 67, 72 (9th Cir.), *cert. denied*, 369 U.S. 864, 82 S.Ct. 1030, 8 L.Ed.2d 84 (1962)). Accordingly, conviction of willful conduct within the meaning of section 5322 does not establish the evil intent required for a crime of moral turpitude.

A review of the indictment reinforces our conclusion that Goldeshtein was not convicted of a crime involving moral turpitude. *See Tseung Chu*, 247 F.2d at 935–36 ("the indictment is properly considered in coming to a determination whether moral turpitude is involved"). The two substantive counts of the indictment to which Goldeshtein pleaded guilty simply track the language of 31 U.S.C. §§ 5322(b) and 5324(a)(3).[8] Thus, the government was not required to prove intent to defraud to convict him of the offenses defined in the indictment.

## B. Nature of the Crime

 Even if intent to defraud is not explicit in the statutory definition, a crime nevertheless may involve moral turpitude if such intent is "implicit in the nature of the crime." *Winestock v. INS*, 576 F.2d 234, 235 (9th Cir.1978); *see also McNaughton*, 612 F.2d at 459 (whether intent to defraud is an element of a crime is determined by "the statutory definition or by the nature of the crime"); *Matter of Flores*, 17 I & N Dec. 225, 228 (BIA 1980) ("where fraud is inherent in an offense, it is not necessary that the statute prohibiting it include the usual phraseology concerning fraud in order for it to involve

7. Similarly, here, Goldeshtein testified at the deportation hearing that he did not know that his conduct was unlawful.

8. Count seven of the indictment charged that Goldeshtein, his codefendants, "and others knowingly, willfully, and for the purpose of evading the reporting requirements of Title 31, United States Code, Section 5313(a), structured, assisted in the structuring of, and attempted to structure and assist in the structuring of financial transactions with domestic financial institutions by purchasing or causing to be purchased forty-four money orders, totalling approximately $46,-748.00, each of which was in an amount of less than $10,000.00[.]" Count nine charged that Goldeshtein and his codefendants "knowingly, willfully, and for the purpose of evading the reporting requirements of Title 31, United States Code, Section 5313(a), structured, assisted in the structuring of, and attempted to structure and assist in the structuring of financial transactions with domestic financial institutions by causing a total of $32,675 in cash to be deposited in amounts of less than $10,000[.]"

moral turpitude"). The INS asserts that, despite the absence of intent to defraud in the statutory definition of Goldeshtein's offense, such intent is part of its "essential nature." We disagree.

The INS essentially reiterates the analysis propounded by the BIA in its decision. Fraud is inherent in the offense, concluded the BIA, because structuring financial transactions to avoid currency reports has the effect of depriving the government of information regarding currency transactions. *Matter of Goldeshtein*, Interim Dec. No. 3158, slip op. at 6 (opining that a violation of 31 U.S.C. § 5324(a)(3) is inherently fraudulent because "it involves conduct which 'impair[s] or obstruct[s] an important function of a department of the government by defeating its efficiency or destroying the value of its lawful operations by deceit, graft, trickery, or dishonest means'") (quoting *Matter of Flores*, 17 I & N Dec. at 229). Unlike the alien in *Flores*, however, Goldeshtein did not obtain anything from the government by deceit, graft, trickery, or dishonest means. *See id.* at 229 (ruling that Flores's crime involved moral turpitude because he knowingly presented false or counterfeit documents to the INS to obtain naturalization papers). The other cases upon which the INS and the BIA rely are subject to the same distinction; they all involve some false or deceitful conduct through which the alien obtained something from the government. *See Winestock*, 576 F.2d at 235 (intent to defraud is inherent in the offense of dealing in counterfeit obligations because petitioner had "admitted intending to pass off something valueless as being something of value"); *Bisaillon v. Hogan*, 257 F.2d 435, 437 (9th Cir.) (fraud was inherent where the statute "requires for conviction proof of a false statement, knowingly and willfully made, with *intent* to obtain the issuance of a passport contrary to law") (emphasis added), *cert. denied*, 358 U.S. 872, 79

S.Ct. 112, 3 L.Ed.2d 104 (1958); *United States ex rel. Popoff v. Reimer*, 79 F.2d 513, 515 (2d Cir.1935) (fraud is inherent in the offense of making false statements on behalf of an alien in order to allow the alien to obtain naturalization); *Matter of R—*, 5 I & N Dec. 29, 38 (BIA 1952) (fraud is inherent in a conviction for knowingly making a false statement for the purpose of evading military service because the defendant "attempted to deceive the Government through false representations for the purpose of obtaining an occupational deferment to which he was not entitled"). The offense of structuring financial transactions to avoid currency reports, in contrast, does not involve the use of false statements or counterfeit documents, nor does the defendant obtain anything from the government. Instead, the offense requires only that the defendant conduct cash transactions in amounts of less than $10,000 with the intent to prevent reporting. *See Hoyland*, 914 F.2d at 1129–30. True, the government is deprived of information, but that is only a consequence of conduct that is not of a fraudulent character. We conclude that fraud is not inherent in the nature of this offense.

Finally, in each of the other cases cited in the BIA's decision, either fraud or intent to defraud was explicit in the statutory definition of the alien's crime. *See Matter of D—*, 9 I & N Dec. 605, 606 (BIA 1962) ("intent to defraud the revenue of the United States" part of the statutory definition of the alien's crime); *Matter of E—*, 9 I & N Dec. 421, 423 (BIA 1961) (alien convicted of "conspiracy to defraud the United States"); *Matter of S—*, 2 I & N Dec. 225, 225 (BIA 1944) (alien convicted of "conspiracy to defraud the United States by counseling submission of false statements in a matter before a department of the Government"). Goldeshtein was charged neither with fraud nor with conspiracy to defraud the United States.[9] As we already have pointed out, fraud is not part of

---

9. The other cases cited by the INS stand only for the proposition that, if fraud or conspiracy to defraud the United States is charged, pecuniary loss need not be proven to obtain a conviction. *See Hammerschmidt v. United States*, 265 U.S. 182, 185, 44 S.Ct. 511, 511, 68 L.Ed. 968 (1924) (defendant charged and convicted of "wilfully and unlawfully conspir[ing] to defraud the United States by impairing, obstructing and defeating

a lawful function of its government"); *accord United States v. Lane*, 765 F.2d 1376, 1379 (9th Cir.1985) ("[t]he term 'to defraud' as used in [18 U.S.C. § ]371 not only reaches property or pecuniary loss ... but also protects the integrity of the United States, its agencies, programs, and policies"); *United States v. Vazquez*, 319 F.2d 381, 384 (3d Cir.1963) (same).

the statutory definition of the crime of structuring financial transactions to avoid currency transaction reports. Accordingly, proof of intent to defraud was not required to convict Goldeshtein.

## III. CONCLUSION

Because Goldeshtein was not convicted of a crime involving moral turpitude, he is not deportable under 8 U.S.C. § 1251(a)(2)(A)(i). Accordingly, we grant his petition for review in No. 91–70573, reverse the BIA's decision, and remand with instructions to terminate the deportation proceedings.[10]

PETITION FOR REVIEW IN No. 91–70573 GRANTED; DECISION OF THE BOARD OF IMMIGRATION APPEALS REVERSED AND REMANDED. PETITIONS FOR REVIEW IN Nos. 92–70228 AND 92–70711 DISMISSED AS MOOT.

---

10. Goldeshtein's motion to remand for certain other proceedings is dismissed as moot.

