# In re L-V-C-, Applicant

*Decided March 25, 1999*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

An alien convicted of causing a financial institution to fail to file currency transaction reports and of structuring currency transactions to evade reporting requirements, in violation of 31 U.S.C. §§ 5324(1) and (3) (1998), whose offense did not include any morally reprehensible conduct, is not convicted of a crime involving moral turpitude. *Matter of Goldeshtein*, 20 I&N Dec. 382 (BIA 1991), *rev'd*, 8 F.3d 645 (9th Cir. 1993), overruled.

Tony Chavez, Esquire, Odessa, Texas, for applicant

Barbara Judith Cigarroa, Assistant District Counsel, for the Immigration and Naturalization Service

Before: Board En Banc: SCHMIDT, Chairman; DUNNE, Vice Chairman; VACCA, HEILMAN, HOLMES, HURWITZ, VILLAGELIU, FILPPU, COLE, ROSENBERG, MATHON, GUENDELSBERGER, JONES, GRANT, SCIALABBA, and MOSCATO, Board Members.

GUENDELSBERGER, Board Member:

In a decision dated July 22, 1996, the Immigration Judge found that the applicant was not inadmissible and ordered him admitted to the United States as a nonimmigrant visitor. This appeal by the Immigration and Naturalization Service involves the question whether the applicant has been convicted of a crime involving moral turpitude. The applicant was convicted on July 8, 1992, under 31 U.S.C. §§ 5324(1) and (3) (1988), for causing a financial institution to fail to file currency transaction reports and structuring currency transactions to evade reporting requirements. In *Matter of Goldeshtein*, 20 I&N Dec. 382 (BIA 1991), we held that a conviction under § 5324(3) involved moral turpitude. The United States Court of Appeals for the Ninth Circuit reversed our holding, finding that such a crime did not involve moral turpitude. *Goldeshtein v. INS*, 8 F.3d 645 (9th Cir. 1993). As the instant case arises within the jurisdiction of the Fifth Circuit, we are not bound by the Ninth Circuit's holding in *Goldeshtein*. Because of the importance of uniform application of the law, however, we here reconsider our holding in *Matter of Goldeshtein*. In light of the Ninth Circuit's decision in

*Goldeshtein* and other recent developments in the law, we find that a conviction under 31 U.S.C. §§ 5324(1) and (3) does not inherently involve moral turpitude. We will therefore affirm the decision of the Immigration Judge and dismiss the Service's appeal.


## I. FACTS AND PROCEDURAL HISTORY

The applicant is a native and citizen of Mexico who seeks permission to enter the United States as a nonimmigrant visitor. When he attempted to enter at a border inspection point on August 23, 1995, he was detained and placed in exclusion proceedings. The Service alleged that he is inadmissible to the United States under section 212(a)(2)(A)(i)(I) of the Immigration and Nationality Act, 8 U.S.C. § 1182(a)(2)(A)(i)(I) (1994), for having been convicted of a crime involving moral turpitude.[1] The basis of this charge was that on May 13, 1992, the applicant pled guilty in the United States District Court, Western District of Texas, to causing a financial institution to fail to file currency transaction reports and structuring currency transactions to evade reporting requirements, in violation of 31 U.S.C. §§ 5324(1) and (3) and 18 U.S.C. § 1001 (1988). For these convictions, the applicant was fined $5000 and placed on probation for a period of 3 years.

The Immigration Judge ruled that the applicant had not been convicted of a crime involving moral turpitude. In reaching her decision, the Immigration Judge reviewed the statutory language at issue and the record of conviction, including the indictment, judgment, and transcripts of the plea agreement and sentencing hearings before the district court. She also considered an amended judgment entered by the district court in January 1996.[2] After considering this evidence and the language of the count to

---

[1] Section 212(a)(2)(A)(i) of the Act renders inadmissible "any alien convicted of, or who admits having committed, or who admits committing acts which constitute the essential elements of— (I) a crime involving moral turpitude (other than a purely political offense) or an attempt or conspiracy to commit such a crime." As the applicant has not made any admissions of criminal conduct other than his guilty plea, the only question presented is whether his conviction was for a crime involving moral turpitude.

[2] When the applicant appeared before the Immigration Judge in December 1995, his conviction records indicated that he had pled guilty to making false statements. On January 8, 1996, the same United States district court judge who sentenced the applicant in 1992 granted the applicant's motion to correct judgment nunc pro tunc and deleted the words "and False Statements" from the judgment. While the amended conviction record removed the reference to false statements in describing the crimes for which the applicant was convicted, the district court judge did not remove the reference to 18 U.S.C. § 1001, the statutory section that criminalizes making such false statements. The Immigration Judge found, and the Service agreed, that this was a clerical error and that the guilty plea related only to violations of 31 U.S.C. §§ 5324(1) and (3).

which the applicant pled guilty, the Immigration Judge made a number of explicit findings: (1) the conviction did not require knowledge that it was a crime to structure currency transactions; (2) evil intent was not an essential element of the crime; and (3) neither a false statement nor an intent to defraud was inherent in the nature of the offense. Based on these findings, the Immigration Judge concluded that the applicant had not committed a crime involving moral turpitude, terminated the charge against him, and ordered that he be admitted to the United States as a nonimmigrant.[3]

On appeal, the Service asserts that the Immigration Judge was bound to find that the conviction in this case is for a crime involving moral turpitude under our decision in *Matter of Goldeshtein, supra*. On June 30, 1998, we requested supplemental briefs from the parties on whether we should withdraw from our holding in *Matter of Goldeshtein* and adopt the Ninth Circuit's rationale in the interest of a consistent national approach to this issue. The applicant has not filed a supplemental brief. The Service filed a supplemental brief in which it asserts that we should continue to apply our holding in *Matter of Goldeshtein*, that a conviction for structuring currency transactions is a crime involving moral turpitude, in cases outside of the Ninth Circuit.

The Service argues that we should reject the Ninth Circuit's approach in *Goldeshtein* for a number of reasons. It argues that the court mischaracterized the nature of the crime when it concluded that "Goldeshtein did not obtain anything from the government by deceit, graft, trickery or dishonest means." *Goldeshtein v. INS, supra*, at 649. The Service asserts that evading reporting requirements

> is in fact a trickery which leads to the deprivation of valuable governmental information. The fact that a dollar amount cannot be placed on the value of the lost information does not in any way signify that the lost information is without value. The deceit has deprived the government of important and valuable information to which it is legally entitled and which is necessary for its efficient and effective operation. The government has been injured, just as if the individual had employed creative accounting methods with the purpose of avoiding paying taxes. Thus the "nature of the crime" is the intent to deprive the government of a valuable commodity. The actions were "calculated to deceive the government, and therefore, [are] inherently fraudulent." *Matter of Flores*, 17 I&N Dec. 225, 229 (BIA 1980).

Furthermore, the Service stresses the importance of the information obtained through the reporting requirement in the Government's fight against drug trafficking.

---

[3]At the time he attempted to enter the United States in August 1995, the applicant possessed a border crossing card issued in Mexico City in June 1995, which was valid through June 2005.

## II. THE CRIME OF STRUCTURING CURRENCY TRANSACTIONS

The starting point in determining whether a crime involves moral turpitude is the language of the statute itself. The applicant was convicted of structuring currency transactions to evade reporting requirements under 31 U.S.C. §§ 5324(1) and (3), which provided:

No person shall for the purpose of evading the reporting requirements of section 5313(a) with respect to such transaction—

(1) cause or attempt to cause a domestic financial institution to fail to file a report under section 5313(a);[4]

. . .

(3) structure or assist in structuring, or attempt to structure or assist in structuring, any transaction with one or more domestic financial institutions.

Section 5324 was enacted as part of the Money Laundering Control Act of 1986 in an attempt to prevent the laundering of large amounts of ill-gotten currency. *See* Anti-Drug Abuse Act of 1986, Pub. L. No. 99-570, tit. I, subtit. H, § 1354(a), 100 Stat. 3207, 3207-18, 3207-22. The section prohibits the use, within a brief period of time, of multiple currency transactions that, but for the reporting requirement, would have been accomplished in a single transaction. The state of mind required for conviction under this section has been the subject of a 1994 Supreme Court decision and a responsive amendment by Congress in the same year. The Supreme Court also addressed a related currency reporting provision in a 1998 decision. These developments and their impact on our holding in *Matter of Goldeshtein* are discussed below.

### A. Knowledge of Illegality is Not a Required Element of Structuring Currency Transactions

By the time of the applicant's conviction in 1992, several circuit courts had ruled that the Government need not prove that the defendant knew that

---

[4]Section 5313(a) provided:

When a domestic financial institution is involved in a transaction for the payment, receipt, or transfer of United States coins or currency (or other monetary instruments the Secretary of the Treasury prescribes), in an amount [over $10,000], the institution and any other participant in the transaction the Secretary may prescribe shall file a report on the transaction at the time and in the way the Secretary prescribes. A participant acting for another person shall make the report as the agent or bailee of the person and identify the person for whom the transaction is being made.

31 U.S.C. § 5313(a) (1988).

structuring was illegal in order to obtain a conviction under § 5324(3). Rather, it was sufficient to prove that structuring took place and that the defendant acted with the motive of evading reporting requirements. *See, e.g., United States v. Rogers*, 962 F.2d 342, 344 (4th Cir. 1992); *United States v. Dashney*, 937 F.2d 532, 540 (10th Cir.), *cert. denied*, 502 U.S. 951 (1991); *United States v. Hoyland*, 914 F.2d 1125, 1129 (9th Cir. 1990). The Fifth Circuit did not publish a decision on the state of mind issue under § 5324 until a few months after the applicant's conviction. *United States v. Beaumont*, 972 F.2d 91 (5th Cir. 1992). In accord with the decisions in other circuits, *Beaumont* held that the Government was not required to prove that a defendant knew structuring was against the law or acted with specific intent to violate the law. In its decision, the court referred to unpublished decisions in 1988 and 1992 in which the Fifth Circuit had taken that view. *Id.* at 93-94.

The wording of count 2 of the indictment, the count to which the applicant pled guilty, is consistent with the holding in *Beaumont* in regard to state of mind. It charged:

> [Defendant], for the purpose of evading the reporting requirements of Title 31, United States Code, Section 5313(a), did unlawfully, knowingly and wilfully cause, and/or attempt to cause, a domestic financial institution to fail to file a report required under Section 5313(a) and did structure, and or attempt to structure, currency transactions by structuring currency withdrawals, [three transactions in amounts of $9500, $9500, and $9000 described], all in an attempt to cause the domestic financial institution to fail to file required transaction reports under federal law totaling $28,000, in violation of Title 31, United States Code, Section 5324(1) and (3) . . . .

Notably, there is no charge that the applicant knew that structuring currency transactions to avoid the bank's reporting requirements was prohibited by law. In fact, the district court judge specifically noted that the applicant was unaware that it was a crime to structure financial transactions. Both the Board and the Ninth Circuit, in their respective *Goldeshtein* decisions, accepted the prevailing view that a conviction under § 5324(3) could occur without regard to whether the defendant had knowledge of the illegality of the currency structuring itself.

In 1994, the United States Supreme Court rejected the prevailing view of the state of mind requirement discussed above and held that the Government must prove that the individual acted with knowledge that the structuring activity was unlawful. *Ratzlaf v. United States*, 510 U.S. 135, 149 (1994). In reaching this decision, the Supreme Court relied upon a reference to "willful violations" in 31 U.S.C. § 5322(a), the sentencing provision for structuring violations. *Id.* at 142.

Congress quickly amended the structuring statute's sentencing provisions to overrule the Court's holding in *Ratzlaf*. The amendment enacted a separate sentencing provision for § 5324 without the term "willful viola-

tions." *See* Riegle Community Development and Regulatory Improvement Act of 1994, Pub. L. No. 103-325, tit. IV, §§ 411(a), (c), 413(a)(2), 108 Stat. 2160, 2253-54. The stated purpose of this amendment was to restore the "Congressional intent that a defendant need only have the intent to evade the reporting requirement as the sufficient mens rea for the offense." Accordingly, "[t]he prosecution would need to prove that there was an intent to evade the reporting requirement, but would not need to prove that the defendant knew that structuring was illegal." H.R. Conf. Rep. No. 103-652 (1994), *reprinted in* 1994 U.S.C.C.A.N. 1977, at 2024. This remains the current state of the law and is in accord with the law as applied in 1992 by the district court in which the applicant was convicted.

### B. Structuring Currency Transactions is Not Inevitably Nefarious

Although the holding in *Ratzlaf* has been overruled by congressional amendment, the Court's analysis of the structuring statute provides important insights into the nature of a conviction under er § 5324. In particular, the Court commented that, without the requirement of knowledge of illegality, the statute would criminalize otherwise innocent conduct. The Court noted:

> Undoubtedly there are bad men who attempt to elude official reporting requirements in order to hide from Government inspectors such criminal activity as laundering drug money or tax evasion. But currency structuring is not inevitably nefarious. Consider, for example, the small business operator who knows that reports filed under 31 U.S.C. § 5313(a) are available to the Internal Revenue Service. To reduce the risk of an IRS audit, she brings $9,500 in cash to the bank twice each week, in lieu of transporting over $10,000 once each week. That person, if the United States is right, has committed a criminal offense, because she structured cash transactions "for the specific purpose of depriving the Government of the information that Section 5313(a) is designed to obtain." Brief for the United States 28-29. Nor is a person who structures a currency transaction invariably motivated by a desire to keep the Government in the dark. But under the Government's construction an individual would commit a felony against the United States by making cash deposits in small doses, fearful that the bank's reports would increase the likelihood of burglary, or in an endeavor to keep a former spouse unaware of his wealth.

Ratzlaf v. United States, supra, at 144-45.

As indicated above, the Supreme Court was unpersuaded that structuring is so inherently evil that it should be a strict liability crime in the absence of a clear expression of such an intent by Congress. The Court's concerns regarding the broad sweep of the statute were an important factor in its reading of the law to require proof that those charged with structuring violations acted with knowledge that such conduct was unlawful. *Id.* at 149. Now that Congress has amended the law to eliminate proof of knowledge of illegality as an element of the conviction, the statute again encompasses convictions which, as the Court observed, are not necessarily evil or nefar-

ious and not "invariably motivated by a desire to keep the Government in the dark." *Id.* at 145.

### C. Structuring Currency Transactions to Evade Reporting Requirements Does Not Involve Fraud Upon the Government

A recent Supreme Court decision provides considerable guidance on the question whether failure to file reporting requirements and structuring currency transactions involves fraud upon the Government. In *United States v. Bajakajian*, 524 U.S. 321, 118 S. Ct. 2028 (1998), the Court addressed the related statutory requirement that the transport of over $10,000 into or out of the country must be reported to customs officials. 31 U.S.C. § 5316(a) (1994). The issue before the Court was whether application of the forfeiture provision for failure to report such transactions violated the Eighth Amendment's Excessive Fines Clause. In resolving this issue the Court carefully examined the question whether failure to report a currency transaction involves fraud upon the Government. This aspect of the analysis, although not directly controlling, provides practical guidance in the instant case.

The reporting provision at issue in *Bajakajian*, § 5316(a)(1)(A), required that any person who "knowingly" transports over $10,000 in monetary instruments from the United States to a place outside the United States shall file a report. The defendant in *Bajakajian* pled guilty to failing to report that he was transporting more than $10,000 outside of the United States, and that he did so willfully, in violation of 31 U.S.C. § 5316(a)(1)(A).[5] The Government sought the forfeiture of the $357,144 that Mr. Bajakajian was transporting, pursuant to 18 U.S.C. § 982(a)(1) (1994), which provides that a person convicted of willfully violating § 5316 shall forfeit any property involved in such an offense. The Supreme Court held that the forfeiture of the entire $357,144 would violate the Excessive Fines Clause of the Eighth Amendment of the United States Constitution because it would be grossly disproportionate to the gravity of the offense. In discussing the gravity of Bajakajian's reporting offense, the Court reasoned that "the essence of [his] crime is a willful failure to report the removal of currency from the United States." *United States v. Bajakajian*, 118 S. Ct. at 2038. Under the facts, the crime was "unrelated to any other illegal activities," and Bajakajian was not a person for whom the statute was intended, i.e., "a money launderer, a drug trafficker, or a tax evader." *Id.* The Court also noted that the sentencing levels for the offense indicated a low level of culpability.

---

[5]The Government agreed to dismiss a false material statement charge under 18 U.S.C. § 1001. *United States v. Bajakajian, supra*, at 2032.

Most important to our decision in the instant case is the Court's explicit observation concerning the question of fraud. In describing the harm that Bajakajian caused as "minimal," the Court explained:

> Failure to report his currency affected only one party, the Government, and in a relatively minor way. *There was no fraud on the United States*, and the respondent caused no loss to the public fisc. Had his crime gone undetected, the Government would have been deprived only of the information that $357,144 had left the country.

*Id.* at 2039 (emphasis added).

While the technical reporting requirements in *Bajakajian* and the instant case differ, the question of withholding information from the Government is analogous. In the *Bajakajian* situation, failure to report or a false report deprived the Government of information that was required by law. In the instant case, the structuring of the financial transaction deprived the Government of information that would otherwise have been reported to it by the bank. The Court's finding in *Bajakajian* of "no fraud," "no loss to the public fisc," and Government deprivation of only "information" appear to be equally applicable to the § 5324 structuring violation at issue in the instant case.[6]

Having reviewed the Court's decisions in *Ratzlaf* and *Bajakajian*, we now turn to the question of the impact of these decisions on our analysis in *Matter of Goldeshtein, supra*.

## III. REEXAMINATION OF MATTER OF GOLDESHTEIN

In *Matter of Goldeshtein*, we determined that a conviction for structuring currency transactions under 31 U.S.C. § 5324 was "inherently fraudulent" because the act of evading the reporting requirements is "'an affirmative act calculated to deceive the government'" and "involves conduct which 'impair[s] or obstruct[s] an important function of a department of the government by defeating its efficiency or destroying the value of its lawful operations by deceit, graft, trickery, or dishonest means.'" *Matter of Goldeshtein, supra*, at 386 (quoting *Matter of Flores*, 17 I&N Dec. 225, 229 (BIA 1980)). Accordingly, we held that an offense under 31 U.S.C. § 5324(3) constitutes a crime involving moral turpitude.

The Board's test for moral turpitude in *Flores* and *Goldeshtein* has its origins in *Matter of S-*, 2 I&N Dec. 225 (BIA 1944). There the Board ruled

---

[6]As in *Bajakajian*, there is no indication that the applicant was involved with any other illegal activity, or that he structured the withdrawals with knowledge that his conduct was illegal.

that a conspiracy to make and cause to be made false and fraudulent statements is a crime involving moral turpitude. The goal of the conspiracy was to counsel aliens who were members of the German-American Bund to deny their membership when registering under the Alien Registration Act. The Board ruled that "[c]onspiracy to 'defraud the United States' under the section in question means, primarily to cheat the Government out of any money or property, but also means to interfere with or obstruct lawful governmental functions by deceit, graft, or trickery or dishonest means." *Id.* at 227. The conspiracy, if successful, would have provided the Government false information and defeated an important Government function. Thus it was found to be a crime involving moral turpitude.

*Matter of Flores, supra*, involved a similar offense. There the conviction was for the offense of uttering or selling counterfeit papers relating to the registry of aliens in violation of 18 U.S.C. § 1426(b). We noted in *Flores* that, although intent to defraud the Government was not specifically made an element of a conviction under 18 U.S.C. § 1426(b), such a conviction required proof of knowledge that the documents in question were false or counterfeit. *Id.* We concluded that "where fraud is so inextricably woven into the statute as to clearly be an ingredient of the crime, it necessarily involves moral turpitude." *Id.* at 228. We further found that fraudulent conduct is implicit in that section of the statute because the act of uttering or selling false and counterfeit papers relating to the registry of aliens involves a deliberate deception of the Government and an impairment of its lawful functions. *Id.* at 230.

In *Matter of Goldeshtein*, the Board extended the rationale of *Matter of S-* and *Matter of Flores* to a situation in which the offense itself did not involve the use of false statements or counterfeit documents. Rather, the evasion of the reporting requirement itself was identified as "'an affirmative act calculated to deceive the government'" and to deprive the Government of information which could impair important governmental functions. *Matter of Goldeshtein, supra*, at 386 (quoting *Matter of Flores, supra*, at 229). The Ninth Circuit rejected the Board's conclusion that the evasion of currency reporting requirements was "inherently fraudulent." The court concluded that there was no fraud or intent to defraud inherent in the nature of the offense, even though the Government was deprived of information, because the offense did not involve the use of false statements or counterfeit documents; nor did the defendant obtain anything from the Government. *Id.*

The Immigration Judge's findings in this case that not all currency structuring is inevitably nefarious, inherently fraudulent, or damaging to the Government are in accord with the decisions of the Supreme Court in *Ratzlaf* and *Bajakajian* and the Ninth Circuit's decision in *Goldeshtein*. The Court in *Ratzlaf* provided numerous examples of currency structuring involving innocent conduct, and concluded that such transactions are

not "invariably motivated by a desire to keep the Government in the dark." *Ratzlaf v. United States, supra*, at 145. The Court in *Bajakajian* similarly ruled that the reporting violation there at issue involved "no fraud on the United States," "caused no loss to the public fisc," and, if undetected, would have deprived the government only of "information that [dollars] had left the country." *United States v. Bajakajian*, 118 S. Ct. at 2039.

Moral turpitude refers generally to conduct which is inherently base, vile, or depraved, and contrary to the accepted rules of morality and the duties owed between persons or to society in general. *See Matter of Danesh*, 19 I&N Dec. 669 (BIA 1988). Moral turpitude has been defined as an act which is per se morally reprehensible and intrinsically wrong or malum in se, so it is the nature of the act itself and not the statutory prohibition of it which renders a crime one of moral turpitude. *Matter of P-*, 6 I&N Dec. 795 (BIA 1955). There is no per se morally reprehensible conduct involved in the instant case. Nor does this statute inherently relate to such conduct.

Crimes involving fraud are also generally considered crimes involving moral turpitude. As noted above, the element of fraud, deceit, or trickery is not essential to a conviction for currency structuring under § 5324. No doubt, some structuring offenses under § 5324 involve deliberate attempts to deprive the Government of information which would otherwise have been valuable in combating criminal activity. However, the statute encompasses convictions for benign nonreporting which would not impair Government functions, as well as convictions which involve the deliberate cover-up of illegal activity.

As a general rule, when the statute under which an alien is convicted includes some crimes which may, and some which may not, involve moral turpitude, an alien is not excludable or deportable on moral turpitude grounds unless the record of conviction itself demonstrates that the particular offense involved moral turpitude. *Matter of Short*, 20 I&N Dec. 136 (BIA 1989); *Matter of Esfandiary*, 16 I&N Dec. 659 (BIA 1979); *Matter of Garcia*, 11 I&N Dec. 521 (BIA 1966); *Matter of C-*, 5 I&N Dec. 65 (BIA 1953); *see also Hamdan v. INS*, 98 F.3d 183, 187 (5th Cir. 1996) (holding that all possible crimes encompassed within a statutory provision must necessarily involve moral turpitude in order to find that a conviction under that statute is for a crime involving moral turpitude). Here the applicant's conviction occurred under a statutory provision which encompasses at least some violations that do not involve moral turpitude. Further, the record of conviction in this case demonstrates that the applicant's offense did not involve moral turpitude. We therefore find that the crime of which the applicant was convicted is not one involving moral turpitude and that he is not inadmissible under section 212(a)(2)(A)(i)(I) of the Act.

## IV. CONCLUSION

For the foregoing reasons, we affirm the Immigration Judge's findings that a violation of 31 U.S.C. §§ 5324(1) and (3) does not require evil intent, does not require knowledge of the illegality of the conduct, and does not inherently involve fraud upon the Government. In light of the Supreme Court's subsequent decisions in *Ratzlaf* and *Bajakajian*, we withdraw from our holding in *Matter of Goldeshtein*. We now find that not all convictions for causing a financial institution to fail to file currency transaction reports and structuring currency transactions to evade reporting requirements in violation of 31 U.S.C. §§ 5324(1) and (3) necessarily involve moral turpitude. Therefore, as the applicant has shown that he was not convicted of a crime involving moral turpitude, the Immigration Judge correctly terminated the proceedings and admitted the applicant to the United States as a non-immigrant.

**ORDER:**  The appeal of the Immigration and Naturalization Service is dismissed.