MATTER OF CENATICE, et al.

In Exclusion Proceedings

A-20209069, -070, -071, -072,
-074, -079, -081,
-082, -084, -087,
-088, -090, and
-099

*Decided by Board March 28, 1977*

(1) This proceeding involves 13 Haitians who applied for admission at Miami, Forida, January 5, 1976, as refugees. They were subsequently detained for an exclusion hearing during which time they submitted applications for asylum under 8 C.F.R. 108.1 and 108.2 which were denied. At the hearing they were found excludable under section 212(a)(20) of the Immigration and Nationality Act and ordered deported, and they appealed.

(2) No entry is made when an alien is taken into custody upon his arrival in this country. Subsequent proceedings are properly in exclusion. Relief under section 243(h) of the Immigration and Nationality Act is not available. See *Matter of Pierre*, 14 I. & N. Dec. 467 (BIA 1973).

(3) An applicant for refugee status must conform to existing immigration law. If applying for admission, he must apply to the District Director for asylum under 8 C.F.R. 108; and if he has already entered the country, he must apply in deportation proceedings under section 243(h) of the Act. Applicants' claims under Articles 32 and 33 of the Protocol Relating to the Status of Refugees may not be asserted in an exclusion proceeding.

(4) Aliens who have not made entry into the United States do not enjoy the protection of the United States Constitution and cannot claim entitlement to the constitutional rights of due process, equal protection, or right to counsel.

EXCLUDABLE:

Act of 1952—Section 212(a)(20) [8 U.S.C. 1182(a)(20)]—Immigrant—no visa (all applicants)

ON BEHALF OF APPLICANTS: Susan E. Perry, Esquire
El Paso Legal Assistance Society
109 North Oregon Street
El Paso, Texas 79901

BY: Milhollan, Chairman; Wilson, Maniatis, and Appleman, Board Members

In a decision dated January 13, 1977, the immigration judge found the applicants excludable under section 212(a)(20) of the Immigration and Nationality Act and ordered them deported from the United States.

The applicants have appealed from that decision. The appeal will be dismissed.

Applicants, 13 natives and citizens of Haiti, arrived by boat at Miami, Florida, on January 5, 1976, and applied for admission as refugees. Apparently because the applicants did not possess valid immigrant visas as required by section 212(a)(20), they did not appear to the immigration officer to be "clearly and beyond a doubt" entitled to enter the United States and were detained under the provisions of section 235(b) of the Act.[1] We note, however, that despite the explicit requirement of 8 C.F.R. 235.6(a) that the examining immigration officer give immediate notice to the aliens detained of referral to a special inquiry officer (immigration judge), such notice was not given until December 1, 1976, approximately 11 months after the applicants' arrival at Miami.[2] It also appears that the applicants have been in detention since their arrival in this country, first in Florida and then, after September 1, 1976, at the Alien Detention Facility in El Paso, Texas.

The applicants' claim for refugee status centered on allegations that they had departed Haiti after a "narrow escape from the secret police" the previous October, had spent two and a half months in Cuba while their boat was being repaired, and then left for the United States to seek political asylum. Apparently the applicants submitted requests to the District Director in Miami for admission as refugees, as required by 8 C.F.R. 108.1 and 108.2, but the District Director, after consultation with the Director of the Office of Refugee and Migration Affairs, Department of State, denied their applications.[3] An exclusion hearing was eventually held in January 1977 at which the immigration judge found that withholding of deportation pursuant to section 243(h) of the Act[4] does not apply to aliens seeking admission to the United States, but only to those already within this country. The immigration judge also found that statements taken from the applicants at the time of their arrival were admissible even though they were made without benefit of repre-

---

[1] Section 235(b) of the Act states, in pertinent part, that "Every alien . . . who may not appear to the examining immigration officer at the port of arrival to be clearly and beyond a doubt entitled to land shall be detained for further inquiry to be conducted by a special inquiry officer (immigration judge)."

[2] 8 C.F.R. 235.6(a) states that "If, in accordance with the provisions of section 235(b) of the Act, the examining immigration officer detains an alien for further inquiry before a special inquiry officer, he shall *immediately* sign and deliver to the alien a Notice to Alien Detained for Hearing by Special Inquiry Officer (Form I-122)." (Emphasis supplied.)

[3] We note that, despite the immigration judge's recitation that the applicants applied to the District Director for admission as refugees and were denied, copies of their applications as well as copies of the District Director's written decisions do not appear in the record.

[4] Section 243(h) of the Act authorizes the Attorney General "to withhold deportation of any alien within the United States to any country in which in his opinion the alien would be subject to persecution on account of race, religion, or political opinion. . . ."

sentation by counsel, and determined that Articles 32 and 33 of the United Nations' Convention Relating to the Status of Refugees, as amended by the 1967 Protocol Relating to the Status of Refugees (hereinafter cited as the "Protocol") [5] do not apply to aliens not lawfully in this country. Therefore, the applicants were ordered excluded and deported from the United States.

On appeal, the applicants first maintain that, at their exclusion hearing, the immigration judge was required to consider their request to withhold deportation pursuant to section 243(h) of the Immigration and Nationality Act, and to determine whether they qualified as "refugees" under Articles 1 and 33 of the Protocol. As support for this position, counsel for the applicants cites the recent case of *Sannon* v. *United States*, Case No. 74-428-CIV (S.D. Fla. February 17, 1977), in which, under circumstances similar to the present case, the court concluded that the Immigration and Nationality Act authorizes an immigration judge, in an exclusion proceeding, to consider evidence concerning an alien's claim for asylum under the Protocol. Although it is not entirely clear from the opinion, apparently the court concluded that the aliens did not have a right to assert, at an exclusion hearing, claims under section 243(h) of the Act.[6] Thus, it appears under the narrow holding of the *Sannon* case that the court determined section 243(h) is not applicable to an exclusion hearing, but only that a Protocol claim must be heard.

As to the applicability of section 243(h) to exclusion proceedings, the courts and the Board have long held that such relief is clearly limited to deportation proceedings. *Leng May Ma* v. *Barber*, 257 U.S. 185 (1958); *Matter of Pierre*, 14 I. & N. Dec. 467 (BIA 1973). In *Leng May Ma* v. *Barber, supra,* the Supreme Court concluded that an alien seeking admission to the United States who is ineligible for entry is not "within the United States" and therefore not entitled to the benefits of section 243(h).[7] The Court went on to point out:

> For over half a century this Court has held that the detention of an alien in custody pending determination of his admissibility does not legally constitute an entry though the alien is physically within the United States. (Citations omitted.) It seems quite clear

[5] TIAS 6577, 19 U.S. Treaties (Part 5, 1968) 6223.

[6] In *Sannon* v. *United States,* at page 4 of the memorandum opinion, the court stated: "Thus were it not for the Protocol, petitioners would have no grounds for objecting to their exclusion." Again, at page 8 of the memorandum opinion, the Court stated that the Immigration and Nationality Act gives the immigration judge "authority . . . to hear and consider evidence relevant to an excludable alien's claim for asylum *under the Protocol.*" (Emphasis supplied.) No mention is made of section 243(h).

[7] The applicants in the present case were found excludable under section 212(a)(20) of the Act which states, in part, that "any immigrant who at the time of application for admission is not in possession of a valid immigrant visa" is to be excluded from admission into the United States.

that an alien so confined would not be "within the United States" for purposes of §243(h). . . . 357 U.S. at 188.

In *Matter of Pierre, supra,* the Board held, under circumstances similar to the present case, that no entry is made when an alien is taken into custody upon his arrival in this country, that subsequent proceedings are properly in exclusion, and that section 243(h) relief is unavailable. See also *United States ex rel. Tom We Shung* v. *Murff,* 176 F. Supp. 253 (S.D.N.Y. 1959), aff'd 247 F.2d 667 (2 Cir. 1960). The proper procedure for bringing an application for asylum is contained in 8 C.F.R. 108.1 and 108.2. Under these sections, an alien applying for admission to the United States is required to submit a request to the District Director having jurisdiction over the alien's place of residence in the United States or over the port of entry. Apparently this was done in the present case and the applications denied by the District Director, although his opinion does not appear in the record. Such a decision is without appeal to the Board. 8 C.F.R. 108.2.

That portion of the applicants' claim pertaining to the availability, at an exclusion proceeding, of a refugee claim made under Articles 1 and 33 of the Protocol, presents a more difficult question, but one which ultimately must also fail.

Article 1 defined a refugee as a person who, as a result of events occurring before January 1, 1951,

> . . . owing to well-founded fear of being persecuted for reasons of race, religion, nationality, membership of a particular social group or political opinion, is outside the country of his nationality and is unable or, owing to such fear, is unwilling to avail himself of the protection of that country; or who, not having a nationality and being outside the country of his former habitual residence as a result of such events, is unable or, owing to such fear, is unwilling to return to it.

Article 33 is as follows:

Prohibition of Expulsion or Return ("Refoulement")

> 1. No Contracting State shall expel or return ("refouler") a refugee in any manner whatsoever to the frontiers of territories where his life or freedom would be threatened on account of his race, religion, nationality, membership of a particular social group or political opinion.
>
> 2. The benefit of the present provision may not, however, be claimed by a refugee whom there are reasonable grounds for regarding as a danger to the security of the country in which he is, or who, having been convicted by a final judgment of a particularly serious crime, constitutes a danger to the community of that country.

In *Matter of Dunar,* 14 I. & N. Dec. 310 (BIA 1973), we found, in interpreting the effect of Articles 32 and 33 of the Protocol on immigration law, that the United States Senate "in giving its advice and consent to accession to the Protocol did not contemplate that radical changes in the existing immigration laws would be effected." [8] 14 I. & N. Dec. at

---

[8] Although such a claim was not made, it is clear that Article 32 also would not apply in the present case. That Article forbids the Contracting State from expelling a refugee

314. Quite the contrary, as pointed out in *Matter of Dunar*, "the general tenor of the representations was that the existing immigration laws already made provision for the refugee reforms sought by the Convention and Protocol." 14 I. & N. Dec. at 319. Thus, it seems clear that an applicant for refugee status must conform to existing immigration law, that is, if the alien is applying for admission to the United States, he must apply to the District Director for asylum in accordance with the terms of 8 C.F.R. 108.1 and 108.2, and if he has already entered this country, in accordance with the provisions of section 243(h).

The Board's position with regard to the availability of the Protocol in an exclusion proceeding was recently supported by the Fifth Circuit Court of Appeals in the case of *Pierre* v. *United States*, 547 F.2d 1281, (5 Cir. 1977). There the court held that the Protocol left intact the Service's procedure for determining refugee status and that:

> It is clear from the terms of the Protocol itself that an applicant for asylum must fit the definition of bona fide refugee before he can take relief from the terms of the Protocol. Because the Protocol contained no procedures for this determination, and because Congress saw fit at the time of accession to leave existing procedures unchanged, we conclude that it was the intent of Congress that existing procedures be followed.

Therefore, the applicants' protestations to the contrary, it is clear that existing immigration procedure affords those applying for refugee status adequate opportunity to have their status decided before a District Director. Their contentions that section 243(h) and the Protocol require that their claims be determined at an exclusion proceeding are clearly without merit.

The applicants next claim that to not allow their refugee claims to be heard in exclusion proceedings is a violation of due process and their right to equal protection under the Fifth Amendment of the United States Constitution, and that their exclusion and subsequent deportation to Haiti would constitute cruel and unusual punishment under the Eighth Amendment. It is clear, however, that it is not within the province of this Board to pass upon the constitutionality of the statutes it administers, but rather is solely within the power and capacity of the United States courts to declare them unconstitutional. *Matter of Pierre, supra; Matter of L——*, 4 I. & N. Dec. 556 (BIA 1951).[9]

---

*lawfully in the territory.* As discussed, *supra*, an alien applying for admission to this country is not lawfully within the United States. See *Leng May Ma* v. *Barber, supra; Matter of Dunar, supra.*

[9] We note that the Supreme Court has pointed out that Congress clearly has the power to draw distinctions between classes of aliens which if drawn between classes of citizens would appear to violate equal protection. *Leng May Ma* v. *Barber, supra.* Aliens who have not made entry into the United States do not enjoy the protections of the United States Constitution. *Kleindienst* v. *Mandel*, 408 U.S. 753, 762 (1972); *Pierre* v. *United States, supra.*

The applicants also contend that the alleged failure of the Service to allow them to obtain counsel prior to their initial interrogation upon arrival in the United States and the failure of the Service to provide counsel for the indigent aliens violated their constitutional right to counsel.

From the applicable case law, it would appear that just as the constitutional rights to due process and equal protection are denied to aliens applying for admission to the United States[10], so also is the constitutional right to counsel. At any rate, section 292(b) of the Act grants a right to counsel to aliens in an exclusion proceeding but "at no expense to the Government." It should be noted, however, that right to counsel may not apply to preliminary investigations. See *Matter of S—*, 8 I. & N. Dec. 409 (BIA 1959). In the present case, the statements in question pertained to the applicants' refugee status and were made to immigration officers at the time of their arrival in the United States. Such statements were not in any way used against them at their exclusion hearing, at which time counsel had been secured, but rather pertained solely to the issue of their refugee status. As pointed out, *supra*, the District Director's decision on that issue is not appealable to this Board. 8 C.F.R. 108.2.

Lastly, counsel argues that the applicants were denied due process and that administrative regulations were violated when their cases were not continued pending investigation of their refugee status by the State Department and when they were denied the right to transfer their exclusion hearing to Miami, Florida. As to the refugee claim, we are again without jurisdiction to consider the issue. 8 C.F.R. 108.2. As to the allegations concerning the right to have their exclusion hearing transferred to Miami, the applicants allege only that they have been deprived of "community support" and "representation by expert counsel." No showing has been made that present counsel is incompetent or that the applicants have in any way suffered deprivation as a result of the exclusion hearing having taken place in El Paso. Clearly such unsubstantiated allegations are not sufficient to mandate transfer of the proceedings.

The appeal is dismissed.

ORDER: The appeal is dismissed.

---

[10] See discussion, *supra*, accompanying footnote 9.

167