# In re Leoncio Crisoforo GONZALEZ-CAMARILLO, Respondent

## File A41 388 122 - Seattle

*Decided June 19, 1997*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

An alien who is deportable under sections 241(a)(2)(A)(iii) and (B)(i) of the Immigration and Nationality Act, 8 U.S.C. §§ 1251(a)(2)(A)(iii) and (B)(i) (1994), is ineligible for a waiver of inadmissibility under section 212(c) of the Act, 8 U.S.C. § 1182(c) (1994), *as amended by* Antiterrorism and Effective Death Penalty Act of 1996, Pub L. No. 104-132, § 440(d), 110 Stat. 1214, 1277 (enacted Apr. 24, 1996), regardless of whether the waiver is requested alone or in conjunction with an application for adjustment of status.

FOR RESPONDENT: Michael E. Meltzer, Esquire, Portland, Oregon

BEFORE: Board En Banc: SCHMIDT, Chairman; DUNNE, Vice Chairman; HEILMAN, HOLMES, HURWITZ, FILPPU, COLE, MATHON, and GUENDELSBERGER, Board Members. Concurring and Dissenting Opinion: ROSENBERG, Board Member, joined by VACCA and VILLAGELIU, Board Members.

SCHMIDT, Chairman:

The issue in this case is whether an alien who is deportable under sections 241(a)(2)(A)(iii) and (B)(i) of the Immigration and Nationality Act, 8 U.S.C. §§ 1251(a)(2)(A)(iii) and (B)(i) (1994), is eligible for a waiver of inadmissibility under section 212(c) of the Act, 8 U.S.C. § 1182(c) (1994), *as amended by* Antiterrorism and Effective Death Penalty Act of 1996, Pub L. No. 104-132, § 440(d), 110 Stat. 1214, 1277 (enacted Apr. 24, 1996) ("AEDPA"), when the waiver is requested alone, or in conjunction with an application for adjustment of status. The Immigration Judge determined that the respondent was ineligible for such relief and ordered him deported. The respondent appealed that decision. The appeal will be dismissed.

## I. SUMMARY OF FACTS

The respondent is a native and citizen of Mexico who was admitted to the United States as a lawful permanent resident on December 14, 1987. He was

convicted on December 14, 1993, in the Superior Court for the State of California, County of Yolo, of the offense of transportation/sale of a controlled substance, cocaine, in violation of section 11352 of the California Health and Safety Code.

The Immigration and Naturalization Service initiated deportation proceedings, charging the respondent with deportability as an alien who has been convicted of a controlled substance violation and an aggravated felony. At a hearing before the Immigration Judge on May 21, 1996, the respondent admitted the allegations of the Order to Show Cause and Notice of Hearing (Form I-221) and conceded deportability. The respondent sought to apply for a section 212(c) waiver, both alone and in conjunction with an application for adjustment of status.

The Immigration Judge found that the respondent was not eligible for a waiver as a result of the amendments to section 212(c) by the AEDPA. He further concluded that adjustment of status was not available to eliminate the respondent's deportability.

## II. ISSUES ON APPEAL

The respondent has presented two issues in his appeal. First, the respondent argues that he is eligible to apply for section 212(c) relief despite the amendments to that section by the AEDPA. In the alternative, the respondent asserts that even if the amendments to section 212(c) of the Act do apply, he is nevertheless eligible to seek adjustment of status in conjunction with the waiver.

## III. THE AEDPA AMENDMENT TO SECTION 212(c)

The Antiterrorism and Effective Death Penalty Act of 1996 was enacted on April 24, 1996. Prior to that date, section 212(c) of the Act provided as follows:

> Aliens lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General without regard to the provisions of subsection (a) (other than paragraphs (3) and (9)(C)). Nothing contained in this subsection shall limit the authority of the Attorney General to exercise the discretion vested in him under section 211(b). The first sentence of this subsection shall not apply to an alien who has been convicted of one or more aggravated felonies and has served for such felony or felonies a term of imprisonment of at least 5 years.

Section 440(d) of the AEDPA amended the last sentence of section 212(c) of the Act. Congress subsequently made a technical correction to section 440(d) of the AEDPA in section 306(d) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Division C of Pub. L. No. 104-208, 110 Stat. 3009-546, 3009-612 (enacted Sept. 30, 1996). The last sentence of section 212(c) of the Act currently provides as follows:

> This subsection shall not apply to *an alien who is deportable by reason of having committed any criminal offense covered in section 241(a)(2)(A)(iii), (B), (C), or (D)*, or any offense covered by section 241(a)(2)(A)(ii) for which both predicate offenses are, without regard to the date of their commission, otherwise covered by section 241(a)(2)(A)(i). (Emphasis added.)

## IV.  SECTION 212(c) ELIGIBILITY

Prior to the Immigration Judge's decision, we had considered the question whether the AEDPA amendments to section 212(c) were retroactive in *Matter of Soriano*, 21 I&N Dec. 516 (BIA 1996). In that decision, we determined that aliens who were deportable by reason of having committed any of the criminal offenses described in the amended statute were barred from eligibility for relief if their applications were filed after April 24, 1996. Consequently, those aliens whose applications were pending on that date remained eligible for relief.

However, our decision was certified to the Attorney General for review pursuant to 8 C.F.R. § 3.1(h)(iii) (1996) upon the request of the Commissioner of the Service. In an order dated September 12, 1996, the Attorney General vacated the Board's decision pending further review. Subsequently, on February 21, 1997, the Attorney General issued an order concluding that the amendments to section 212(c) by section 440(d) of the AEDPA should apply to all cases pending before the Executive Office for Immigration Review on the effective date of the statute.[1]

At the time the Immigration Judge rendered his decision on August 5, 1996, the Board's decision had been certified for review by the Attorney General. Although the Immigration Judge questioned the validity of the Board's order in *Matter of Soriano, supra*, following certification, he nevertheless applied the ruling of the Board in that case. However, he found that the respondent's application was not properly filed until April 25, 1996. The Immigration Judge therefore concluded that because the respondent's waiver application was not pending on April 24, 1996, he was barred from establishing eligibility for section 212(c) relief by the AEDPA amendments.

On appeal the respondent argues that the amendments of section 440(d) of the AEDPA should not be applied retroactively to prohibit him from applying for section 212(c) relief. However, that question has been determined by the Attorney General in *Soriano*. Therefore, we find that section 440(d) of the AEDPA applies to the respondent's application for section 212(c) relief. Inasmuch as the respondent is "an alien who is deportable by reason of having committed [a] criminal offense covered in section[s] 241(a)(2)(A)(iii) [and] (B)" of the Act, we find that section 212(c) of the Act is not available to

---

[1] The Attorney General also ordered the Board and the Immigration Judges to reopen cases upon petition by an alien who conceded deportability before April 24, 1996, for the limited purpose of permitting the alien to contest deportability. However, this order does not apply to the respondent because he conceded deportability on May 21, 1996.

waive the grounds of deportability with which he was charged. AEDPA § 440(d).

## V. SECTION 212(c) IN CONJUNCTION WITH ADJUSTMENT OF STATUS

The respondent also argues that he is still eligible to apply for a section 212(c) waiver in conjunction with an application for adjustment of status. He contends that the AEDPA amendments apply only to "deportable" aliens who are seeking to waive grounds of deportability, and that aliens in exclusion proceedings are not barred from section 212(c) relief.

The respondent further argues that applicants for adjustment of status, who are assimilated to persons seeking admission at the border or through consular processing, need a waiver only to remove grounds of inadmissibility. He therefore asserts that an alien in deportation proceedings can still apply for a section 212(c) waiver for the limited purpose of removing the exclusion grounds that render him inadmissible (as well as deportable) to establish eligibility for adjustment of status. Finally, the respondent contends that it is a violation of equal protection to deny a waiver to applicants for adjustment of status in deportation proceedings while similarly situated criminal aliens seeking entry in exclusion proceedings, in consular processing, or through administrative adjustment proceedings before the Service are permitted to apply.

In *Matter of Fuentes-Campos*, 21 I&N Dec. 905 (BIA 1997), we decided that section 212(c) relief is available in exclusion proceedings to aliens who have committed a criminal offense described in section 440(d) of the AEDPA. We construed the language of the statute literally, finding that the words, "who is deportable," applied only to aliens in deportation proceedings. We therefore concluded that the bar to eligibility for a waiver set forth in the AEDPA amendments was not applicable to aliens in exclusion proceedings. Nevertheless, we reject the respondent's assertion that section 212(c) relief is available to waive exclusion grounds in deportation proceedings for purposes of establishing eligibility for adjustment of status.

As we emphasized in *Matter of Fuentes-Campos, supra*, the language of the AEDPA amendments is unambiguous. It applies to any alien "who is deportable" by reason of having committed any of the specified criminal offenses. The statute clearly bars all such deportable aliens from applying for section 212(c) relief in deportation proceedings.

Although we have stated that applicants for adjustment of status in deportation proceedings are "assimilated" to the position of aliens seeking entry, they are nevertheless "deportable" aliens. *See Matter of Connelly*, 19 I&N Dec. 156, 159 (BIA 1984). Congress gave no indication that criminal aliens seeking a waiver in order to apply for adjustment of status in deportation proceedings were exempt from the AEDPA's section 440(d) bar. The

respondent has not presented any legislative history to support his interpretation of the law. We therefore do not find it appropriate to read such an exception into the plain language of the statue.

Our prior precedent decisions do not require a different result. In *Matter of Smith*, 11 I&N Dec. 325, 327 (BIA 1965), we held that an alien in deportation proceedings could apply for section 212(c) relief in conjunction with an application for adjustment of status, noting that the statute in effect at that time did not preclude such a procedure. *See also Matter of S-*, 6 I&N Dec. 392 (BIA 1954; A.G. 1955) (finding that nothing in the language of section 212(c) or its legislative history indicated that Congress disapproved of the prior administrative practice of granting a waiver on a nunc pro tunc basis). However, the statute we now construe demands a contrary conclusion.

In enacting section 440(d) of the AEDPA, Congress clearly intended to restrict the availability of section 212(c) relief by prohibiting the specified deportable criminal aliens from applying for a waiver in deportation proceedings. The legislative history of the AEDPA indicates that the purpose of section 440 was to "enhance[] the ability of the United States to deport criminal aliens." *See* H.R. Conf. Rep. No. 518, 104th Cong., 2d Sess. (1996), *reprinted in* 1996 U.S.C.C.A.N. 924, 952. In light of this statement of congressional intent, it cannot be said that the statute permits us to continue to apply our prior case law to deportable aliens within the scope of section 440(d) in disregard of its unambiguous mandate.

We also find no merit to the respondent's contention that permitting similarly situated aliens (i.e., aliens convicted of the same offense) to apply for section 212(c) relief in exclusion proceedings or in consular processing, but not in deportation proceedings in conjunction with adjustment of status, would result in disparate treatment in violation of the Equal Protection Clause of the Constitution. The groups at issue here are not, in fact, equally situated, as they were found to be in *Francis v. INS*, 532 F.2d 268 (2d Cir. 1976).

Prior to *Francis*, the Board had permitted permanent resident aliens to apply for a section 212(c) waiver in deportation proceedings without an adjustment application only if they had departed from the United States after becoming subject to deportation and were therefore inadmissible at the time of their last entry. *See Matter of Silva*, 16 I&N Dec. 26, 28 (BIA 1976); *Matter of Arias-Uribe*, 13 I&N Dec. 696 (BIA 1971), *aff'd*, 466 F.2d 1198 (9th Cir. 1972). The court concluded that this differential treatment of *deportable* aliens in deportation proceedings who had departed and similarly situated *deportable* aliens who had not was not rationally related to any legitimate purpose of the statute. This distinction, which had been created administratively by the Board's interpretation of section 212(c), was therefore found to be a violation of equal protection.

The distinction here, however, between deportable aliens and aliens in exclusion proceedings or in consular processing, is one created by the statute

itself. Congress made the determination to preclude aliens "who are deportable" on the basis of certain criminal conduct from applying for relief under the amended section 212(c) of the Act. Although this may result in differential treatment of aliens who have all been convicted of the same offense, this inequality is inherent in the statutory scheme created by Congress. This Board has no authority to question its constitutionality and must apply the law as written. *See Matter of Hernandez-Puente*, 20 I&N Dec. 335 (BIA 1991); *Matter of Patel*, 19 I&N Dec. 774 (BIA 1988).

Consequently, we find that the respondent, who is deportable on the basis of his criminal conduct, is ineligible to apply for section 212(c) relief in order to establish eligibility for adjustment of status in these deportation proceedings.

## VI.  CONCLUSION

The respondent in this case is deportable under sections 241(a)(2)(A)(iii) and (B)(i) of the Act. Inasmuch as the respondent is an alien "who is deportable" by reason of having committed an offense described in these sections, he is barred from applying for a waiver under section 212(c) of the Act by virtue of the amendments of section 440(d) of the AEDPA. This bar applies regardless of whether the waiver application is requested alone or in conjunction with an application for adjustment of status. Accordingly, the respondent's appeal will be dismissed.

**ORDER:** The appeal is dismissed.

*CONCURRING AND DISSENTING OPINION*: Lory D. Rosenberg, Board Member, in which Fred W. Vacca, and Gustavo D. Villageliu, Board Members, joined.

I respectfully concur in part and dissent in part.

The salient issue in this case involves the respondent's admissibility to the United States as a lawful permanent resident. Although he requires a waiver of inadmissibility under section 212(c) of the Immigration and Nationality Act, 8 U.S.C. § 1182(c) (1994), the statute, as amended by section 440(d) of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214, 1277 ("AEDPA"), does not preclude such a waiver to overcome excludability and qualify for adjustment of status, nor does it bar such applications in deportation proceedings. The respondent's eligibility for admission as a permanent resident should not be determined by virtue of the forum in which he seeks to establish admissibility, and it is error to so restrict his access to statutory provisions for which he is otherwise qualified.

The respondent has lawfully resided in the United States for nearly 10 years. He is married to a lawful permanent resident who is in the process of seeking to be naturalized, and he has two children, ages 10 and 6, who are

citizens of the United States by birth in this country. His 63-year-old father, who also is a lawful permanent resident, lives with the respondent and his wife.

In dismissing his appeal, the majority violates the plain statutory language of section 440(d) of the AEDPA, which we just recently construed, and contravenes our recent unanimous holding in *Matter of Fuentes-Campos*, 21 I&N Dec. 905 (BIA 1997). In addition, the majority fails to meaningfully address the respondent's arguments and ignores nearly a century of law, including the authority of some 50 years of our own precedent, and currently applicable regulations. *See* 8 C.F.R. § 3.1(g) (1997). Nothing in the statute or the relevant legislative history constitutes an imperative that warrants so distorting our recent interpretation concerning the limited access to a section 212(c) waiver by certain longtime lawful permanent residents.

## I. SUMMARY: SECTION 440(d) AND MATTER OF FUENTES-CAMPOS ALLOW A SECTION 212(c) WAIVER WITH AN ADJUSTMENT OF STATUS APPLICATION

For purposes of the appeal before us, it is important to note that, in relation to his eligibility to adjust status, the respondent does not contend that he is entitled to obtain an outright waiver of the ground on which he is charged with being deportable.[1] Indeed, he no longer is eligible for such a waiver. *See Matter of Soriano*, 21 I&N Dec. 516 (BIA 1996; A.G. 1997); *see also Matter of Fuentes-Campos, supra*. The bottom line, however, is that the respondent is eligible for adjustment of status under section 245 of the Act, 8 U.S.C. § 1255 (1994). My dissent from the majority opinion to the contrary can be summarized, with authorities, in five points.

1. The plain and unambiguous language of section 440(d) of the AEDPA modified section 212(c) of the Act to preclude the waiver it provides in the case of one "*who is deportable* by reason of having committed" one of the grounds of deportability covered under a specified section of the Act. *Matter of Fuentes-Campos, supra*, at 908.[2]

2. That the waiver remains available to one who is excludable and seeks to overcome a ground of inadmissibility is bolstered by the fact that the Supreme Court has long recognized that aliens seeking admission are distinguished from deportable aliens. *Matter of Fuentes-Campos, supra*, at

---

[1] I address here only the second argument asserted by the respondent, as I concur that the decision of the Attorney General in *Matter of Soriano*, 21 I&N Dec. 516 (BIA 1996; A.G. 1997), precludes our entertaining or granting an application for a waiver of a specified ground of deportability under section 212(c) of the Act, as amended, without regard to when the application was filed.

[2] An alien is not deportable by reason of having committed any offense unless and until that alien has been convicted of having committed that offense. *See generally* section 241(a)(2) of the Act, 8 U.S.C. § 1251(a)(2) (1994). The preclusion in section 440(d) of the AEDPA applies, therefore, only to an alien having a conviction for a specified offense.

908 (citing *Leng May Ma v. Barber*, 357 U.S. 185, 187 (1958); *Landon v. Plasencia*, 459 U.S. 21, 25-26 (1982)).

3. Admissibility as an immigrant is determined in a variety of contexts, and an alien seeking adjustment of status in deportation proceedings is assimilated to the position of one making an entry, and must establish admissibility. *Matter of Connelly*, 19 I&N Dec. 156 (BIA 1984); *see also Matter of Jiminez-Lopez,* 20 I&N 738, 741 (BIA 1993); *Matter of Rainford*, 20 I&N Dec. 598 (BIA 1992); *Matter of Hernandez-Casillas*, 20 I&N Dec. 262, 292-93 (BIA 1990; A.G. 1991).

4. A lawful permanent resident retains his status until entry of a final administrative order of deportation, *Matter of Lok*, 18 I&N Dec. 101 (BIA 1981),[3] and may apply for a section 212(c) waiver in connection with an application for adjustment of status made in deportation proceedings. *Matter of Gabryelsky*, 20 I&N Dec. 750 (BIA 1993); *Matter of Lok*, 16 I&N Dec. 441 (BIA 1978); *Matter of Lok*, 15 I&N Dec. 720 (BIA 1976); *Matter of Smith,* 11 I&N Dec. 325 (BIA 1965); *see also* 8 C.F.R. §§ 212.3(e), 245.1(f) (1997). *See generally* 62 Fed. Reg. 10,312, 10,375-77 (1997) (to be codified at 8 C.F.R. § 240.49) (interim, effective Apr. 1, 1997).

5. An alien who establishes admissibility and adjusts his status in deportation proceedings is not deportable, *Matter of Rainford, supra; Matter of Gabryelsky, supra; see also Matter of G-A-*, 7 I&N Dec. 274 (BIA 1956), and there is neither a statutory basis which justifies limiting the forum in which an alien may establish admissibility, nor any rational reason to distinguish among those who require a section 212(c) waiver to be admissible.

## II. THE PLAIN LANGUAGE OF THE STATUTE LIMITS A SECTION 212(c) WAIVER TO OVERCOME DEPORTABILITY, BUT NOT INADMISSIBILITY

The statutory language determines both our analysis and our implementation of any provision enacted by Congress. Where the language is plain, we must accord its unequivocal meaning, and "that is the end of the matter." *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 843 (1984). The majority has found, adamantly, that the statutory language of section 440(d) of the AEDPA is plain, *Matter of Fuentes-Campos, supra*, and that this is the "paramount index" of congressional intent. *Id*. at 907.

Rejecting the conclusion of the Immigration Judge in *Fuentes-Campos*, who contended that the statutory phrase "who is deportable by reason of" referred to any alien who has committed a "described criminal offense," we

---

[3] A lawful permanent resident who seeks to reopen a proceeding to apply for a section 212(c) waiver retains his status for purposes of eligibility for reopening, provided that he was eligible prior to that order, 8 C.F.R. § 1.1(p) (1997), although this requirement is not necessarily applicable to persons in all circuits.

recognized the difference between deportability and inadmissibility.[4] Moreover, we have long held that a waiver to overcome a ground of deportability addresses the particular ground of exclusion or deportation to be waived and not the offense underlying the particular ground. *Matter of Jimenez*, 21 I&N Dec. 567 (BIA 1996); *Matter of Esposito*, 21 I&N Dec. 1, 7-8 (BIA 1995). In essence, the statutory language relevant to this case provides that an alien "who is deportable" by reason of having been convicted of an offense covered by certain specified statuary grounds of deportability may not waive such deportability under section 212(c) of the Act. *See* AEDPA § 440(d); *see also supra* note 2.[5]

We have found that the statutory language "who is deportable" is plain. Unambiguous. A term of art. *Matter of Fuentes-Campos, supra*, at 909. Loose and inexact references to the phrase "who is deportable" by the majority in the case before us, as though the phrase refers broadly to every person in deportation proceedings, are inconsistent with the statutory language and with our analysis in *Matter of Fuentes-Campos*.

There is neither any express statement in the text, nor any equivocal suggestion in the statutory language of section 440(d) of the AEDPA, to suggest that Congress intended, in this respect, to restrict waivers available under section 212(c) to overcome inadmissibility, albeit in the context of a deportation proceeding. There is no basis to believe that Congress' silence in this regard was due to an "accident of draftsmanship." *INS v. Phinpathya*, 464 U.S. 183, 191 (1984). By contrast, as we discuss in *Fuentes-Campos*, other sections of the AEDPA explicitly address application of the statute to excludable or inadmissible aliens. *See* AEDPA § 421(a), 110 Stat. at 1270.

Once again, in the instant decision, the majority has emphasized that the statutory language is unambiguous. *Matter of Gonzalez-Camarillo*, 21 I&N Dec. 937 (BIA 1997). The statutory language in question is the same. The statutory language itself, and *Matter of Fuentes, supra*, which purports to interpret it, then, are the proper guides to our determination in this case. That language refers to one who "is deportable," not to all those in deportation proceedings no matter what the posture of their case.

## III.  ADMISSIBILITY AND ADJUSTMENT OF STATUS

Adjustment of status is a procedure through which an alien either establishes his or her admissibility as an immigrant, or is found excludable and

---

[4] Even following enactment of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Division C of Pub. L. No. 104-208, 110 Stat. 3009-546 ("IIRIRA"), which created a single "removal" proceeding to be conducted in cases initiated after April 1, 1997, separate grounds of inadmissibility and deportability continue to exist.

[5] See cited case law indicating that the phrase "is deportable" has a long history applicable only to deportation proceedings. *Matter of Melo*, 21 I&N Dec. 883 (BIA 1997); *Matter of Ching*, 12 I&N Dec. 710, 712 (BIA 1968); *Matter of T-*, 5 I&N Dec. 459 (BIA 1953).

denied admission. Waivers to overcome excludability are routinely considered and granted in the course of adjudicating adjustment of status applications.

## A. Underpinnings of Adjustment of Status

The term "adjustment" originally described "a wide variety of administrative remedies that result in lawful permanent resident status." *See* David L. Neal, *The Changing Dynamics of Adjustment of Status*, Immigration Briefings, May 1995, at 2.[6] For almost a century, adjustment of status procedures have provided an alternative to the hardships of having to travel or remain abroad for a lengthy period of time. S. Rep. No. 1137, 82d Cong., 2d Sess. 26 (1952).[7]

The present mechanism of adjustment of status was enacted on June 27, 1952, to replace the administrative alternative of pre-examination, and it allowed qualified aliens to be admitted as immigrants without the need to leave the United States.[8] *See* H.R. Rep. No. 1365, 82d Cong., 2d Sess. 63 (1952), *reprinted in* 1952 U.S.C.C.A.N. 1653, 1719. Eligibility requirements for the procedure have since been expanded to allow greater access to the procedure. *Matter of Grinberg*, 20 I&N Dec. 911 (1994); Neal, *supra*, at 19, nn. 28-30.

Although as both a term and a concept, adjustment of status has evolved dramatically since its formal introduction in 1952, its legal purpose and function have never changed. The adjustment of status procedure used today is no more than an alternate means to determine and resolve the admissibility of an alien who seeks to acquire the status of a lawful resident. Satisfaction of the legal requirements for admission are determined by statute and are no different from those applicable overseas. Once eligibility for an immigrant visa has been established, the procedure is distinct from immigrant visa processing at a consular post abroad only with regard to the element of discretion attendant to the process conducted within the United States.

---

[6] See 2 Charles Gordon, Stanley Mailman, and Stephen Yale-Loehr, *Immigration Law and Procedure* § 51.01[1][a], at 51-3 (rev. ed. 1997) (citing S. Rep. No. 748, 89th Cong., 1st Sess. 20 (1965)); S. Rep. No. 1137, 82d Cong., 2d Sess. 24 (1952); S. Rep. No. 1515, 81st Cong., 2d Sess. 591-611 (1950).

[7] In 1924, when immigrant quotas were first instituted, there was no mechanism that would allow aliens already in the United States to change from nonimmigrant to immigrant status. In 1935, a two-step procedure called "preexamination" was created to permit such nonimmigrants to be pre-screened by INS officers and then sent to a neighboring consulate in Canada for visa processing. *See Matter of O-*, 8 I&N Dec. 478, 480 (BIA 1959). For an extensive discussion of section 245 of the Act, see 2 Gordon, et al., *supra*, § 51.01[1][b].

[8] The preexamination procedure, which terminated in 1959, was eventually supplanted by the Stateside Criteria Program ("SCP"), which permitted consular processing in Canada and Mexico for aliens ineligible to adjust their status in the United States, but was discontinued at the end of 1987.

## B. Adjustment of Status in Agency Precedent and Practice

Adjustment of status has long been held to be available before an Immigration Judge in deportation proceedings. *See* 8 C.F.R. §§ 242.17, 245.2(a)(1) (1997). The fact that it is available in deportation proceedings, however, does not change its nature as a mechanism to accomplish the process of determining and granting admission to the United States.

The federal courts have long recognized, as has the Board, that an alien seeking to adjust his status to that of a permanent resident is assimilated to the position of one seeking to enter the United States for permanent residence. *See, e.g., Amarante v. Rosenberg* 326 F.2d 58, 61 (9th Cir. 1964); *Campos v. INS*, 402 F.2d 758, 760 (9th Cir. 1968). Examples of representative cases, constituting decades of consistent administrative precedent upholding the availability of adjustment of status and any necessary waivers of inadmissibility in deportation proceedings, from which the majority today would deviate, include the following.

*Matter of MENDEZ*, 21 I&N Dec. 337 (BIA 1996), holding that an alien with a United States citizen wife and three United States citizen children, if otherwise eligible for an immigrant visa, is assimilated to the position of an intending immigrant, and may apply for adjustment of status and demonstrate eligibility under section 212(h)(1)(B) of the Act by establishing extreme hardship to his wife or children if he were excluded.

*Matter of LAZARTE*, 21 I&N Dec. 214 (BIA 1996), holding that an alien subject to deportation proceedings for document fraud may apply for adjustment of status before the Immigration Judge, but if inadmissible under section 212(a) of the Act, may also be eligible for a waiver of the ground of inadmissibility.

*Matter of JIMENEZ-LOPEZ*, 20 I&N Dec. 738 (BIA 1993), holding that although "admission" normally occurs when an applicant is permitted to pass through the port of entry, this is not the only instance in which an alien's admissibility is determined and communicated, as an applicant for adjustment of status under section 245 of the Act is "assimilated" to the position of an alien seeking entry and must demonstrate admissibility under section 212 of the Act.

*Matter of GABRYELSKY*, 20 I&N Dec. 750 (BIA 1993), holding that a lawful permanent resident alien charged with deportability for both drug and weapons offenses may overcome inadmissibility by adjusting status and obtaining a waiver under section 212(c) of the Act in conjunction with an adjustment application, and is not deportable.

*Matter of RAINFORD*, 20 I&N Dec. 598 (BIA 1992), holding that although a respondent convicted of criminal possession of a weapon is deportable under section 241(a)(2)(C) of the Act, 8 U.S.C. § 1251(a)(2)(c) (Supp. II 1990), such a conviction does not preclude a finding of admissibility in connection with an application for adjustment of status and does not

serve subsequently as a ground of deportability if the respondent's status is adjusted to that of a lawful permanent resident. *Matter of Rafipour*, 16 I&N Dec. 470 (BIA 1978), followed; *Matter of V-*, 1 I&N Dec. 273 (BIA 1942), distinguished.

*Matter of ALARCON*, 20 I&N Dec. 557 (BIA 1992), holding that a respondent who has been convicted of two crimes involving moral turpitude not arising from a single scheme of criminal misconduct is inadmissible under section 212(a) of the Act and is eligible for adjustment of status only if he is eligible for and should be granted a waiver of inadmissibility under section 212(h) of the Act.

*Matter of BALAO*, 20 I&N Dec. 440 (BIA 1992), holding that a waiver under section 212(h) is available in conjunction with an application for adjustment of status, where it may be used to waive inadmissibility that would otherwise preclude adjustment of status.

*Matter of GOLDESHTEIN*, 20 I&N Dec. 382 (BIA 1991), holding that an alien present in the United States who applies for adjustment of status under section 245 of the Act and requires a waiver of inadmissibility may obtain one, even though section 212(h) addresses the eligibility of an alien seeking to enter the United States.

*Matter of CONNELLY*, 19 I&N Dec. 156 (BIA 1984), holding that an alien applying for adjustment of status under section 245 is assimilated to the position of an alien who is making an entry for the purpose of deciding whether the alien meets the requirement of section 245(a) that he be "admissible to the United States for permanent residence."

*Matter OF PARODI*, 17 I&N Dec. 608 (BIA 1980), holding that applicants for adjustment of status have been held to be in the same position as aliens presenting themselves at the border, seeking entry as lawful permanent residents, and an alien deportable under section 241(a)(4) of the Act may obtain a waiver under section 212(h) of the Act in deportation proceedings in conjunction with an adjustment application.

*Matter of LOK*, 16 I&N Dec. 441 (BIA 1978), holding that a waiver of inadmissibility under section 212(c) of the Act may be granted in deportation proceedings in connection with an application for adjustment of status. *See also Matter of Lok*, 15 I&N Dec. 720 (BIA 1976).

*Matter of ZOELLNER*, 15 I&N Dec. 162 (BIA 1974), holding that an alien convicted of two crimes involving moral turpitude and found deportable under section 241(a)(4) of the Act was properly advised that he could apply for both adjustment of status under section 245 and an application for a waiver of inadmissibility under section 212(h) of the Act.

*Matter of KATSANIS*, 14 I&N Dec. 266 (BIA 1973), holding that an alien applying for adjustment of status is assimilated to the position of an alien seeking to enter the United States for permanent residence.

*Matter of ARIAS-URIBE*, 13 I&N Dec. 696 (BIA 1971), holding that when coupled with an application for adjustment of status under section 245 of the

Act, an application for relief under section 212(c) satisfies the statutory requirement that the applicant must be returning to resume a lawful unrelinquished domicile.

*Matter of SMITH*, 11 I&N Dec. 325 (BIA 1965), holding that an applicant for adjustment of status under section 245 of the Act stands in the same position as an applicant who seeks to enter the United States, and as such, his application for a section 212(c) waiver can be considered in conjunction with that application.

Each of these cases, decided over more than a 30-year period, treats adjustment of status as a procedure to determine admissibility. The majority has neither overruled nor modified any of these authorities, yet improperly ignores them in favor of the result obtained in their opinion.

## IV. CONCURRENT APPLICATIONS FOR ADJUSTMENT OF STATUS AND FOR A SECTION 212(c) WAIVER IN DEPORTATION PROCEEDINGS

The long and consistent history of administrative precedent and regulations demonstrates the availability of adjustment of status to one in deportation proceedings, such as the respondent. As we recognize in *Matter of Fuentes-Campos, supra,* it would have been possible for Congress to preclude from eligibility to apply for section 212(c) relief any alien convicted of a described criminal offense. And Congress did not do so. *Id.* at 908.

There is nothing in the statutory language to suggest that Congress intended section 440(d) or any other section of the AEDPA to alter the long-standing practice, affirmed in the regulations, of entertaining applications for waivers of admissibility in connection with adjustment of status applications made in deportation proceedings. *See* 8 C.F.R. §§ 212.3(e), 242.17, 245.1(f) (1996) (as in effect at the time of enactment).[9] The authorities discussed herein uphold the distinction between a section 212(c) waiver obtained to overcome the respondent's *inadmissibility*, in conjunction with an application for adjustment of status, and a waiver to overcome a ground of deportability, which the respondent might have sought prior to the enactment of section 440(d).

A waiver granted in conjunction with adjustment of status is not, as the majority seems to suggest, allowed to achieve some type of equality between deportable and excludable aliens under *Francis v. INS*, 532 F.2d 268 (2d Cir. 1976), and *Matter of Silva*, 16 I&N Dec. 26 (BIA 1976). It has a separate and

---

[9] Notably, neither subsequent legislation, much of which expressly overruled certain Board precedents, nor subsequent regulatory changes have meaningfully altered this process. *See* IIRIRA, *supra*; Joint Explanatory Statement of the Committee of Conference, H.R. Rep. No. 104-2202, *available in* 1996 WL 563320 *and* 142 Cong. Rec. H10,841-02; *see also* 8 C.F.R. §§ 212.3(e), 245.1. *See generally* 62 Fed. Reg. 10,312, 10,376-77 (1997) (to be codified at 8 C.F.R. § 240.49) (interim, effective Apr. 1, 1997).

distinct basis. *Matter of Hernandez-Casillas, supra*, at 290-91. *Compare Matter of Arias-Uribe, supra, with Matter of Smith, supra.*

## A. Access To Adjustment of Status in Deportation Proceedings

The majority has acknowledged that "is deportable" is a term of art, noting the self-evident fact that aliens in exclusion proceedings seeking admission to the United States are not "deportable." *Matter of Gonzalez-Camarillo, supra*, at 940; *Matter of Fuentes-Campos, supra,* at 909. Yet, for purposes of our adjudication today, the majority too casually interchanges the actual statutory language, which it acknowledges is plain and unambiguous and refers to a person who as a matter of substantive law "is deportable," with the jurisdictional posture of one who is in a deportation proceeding. These terms are not the same.

Although it is correct to say that section 440(d) precludes eligibility for a section 212(c) waiver for some persons who are in deportation proceedings, it is not the case that the language bars the waiver to all who once may have been, in the future might be, or are now, in deportation proceedings. The statute must be read as a whole, and various provisions provide both for adjustment of status *and for related waivers of inadmissibility. See K Mart Corp. v. Cartier*, 486 U.S. 281, 291 (1988); *COIT Independence Joint Venture v. Federal Sav. and Loan Ins. Corp.*, 489 U.S. 561 (1989) (stating that "whole statute" interpretation dictates that statutory sections should be read in harmony to achieve a harmonious whole).

Adjustment of status, resulting in admission as a lawful permanent resident, is available in deportation proceedings with or without any necessary waivers of inadmissibility, including a section 212(c) waiver to overcome excludability.[10] *See Matter of Gabreylsky, supra; Matter of Lok*, 16 I&N Dec. 441 (BIA 1978); *Matter of Smith, supra; see also* 8 C.F.R. §§ 212.3(e), 245.1(f) (1997).[11] *See generally* 62 Fed. Reg. 10,312, 10,375-77 (1997) (to

---

[10] Not every criminal alien in deportation proceedings charged with deportability on one or more of the grounds specified under section 212(c), *as amended by* AEDPA § 440(d) "is deportable," and to read the statute as barring all those in deportation proceedings as being precluded from adjustment, which it does not, would be overbroad. For example, some persons in deportation proceedings do not require a section 212(c) waiver to establish eligibility for adjustment of status, including an alien charged with being deportable for certain offenses encompassed under section 212(c), as amended by the AEDPA, such as firearms offenses, or even certain aggravated felony offenses that do not have an excludability counterpart or constitute any ground of inadmissibility. Others may be eligible for relief under section 212(c), notwithstanding section 440(d), since section 435 of the AEDPA, 110 Stat. at 1274-75, may be construed as providing that only an alien whose deportation proceedings were initiated *after* the April 24, 1996, date of enactment "is deportable" under section 241(a)(2)(A)(i) of the Act, as amended, unless the sentence imposed for each of the two crimes of moral turpitude involved actually was for a period of 1 year or longer.

[11] The publication of interim rule 8 C.F.R. § 245.1(f) on March 6, 1997, which makes a concurrent application in the context of an adjustment of status adjudication the sole means to

be codified at 8 C.F.R. § 240.49 (interim, effective Apr.1,1997). Eligibility for a section 212(c) waiver to overcome a ground of inadmissibility turns on lawful permanent resident status, which a lawful permanent resident in deportation proceedings retains until the entry of a final administrative order. *Matter of Gunyadin*, 18 I&N Dec. 326 (BIA 1982); *Matter of Lok,* 16 I&N Dec. 441 (BIA 1978).

An alien who establishes admissibility and adjusts his status in deportation proceedings is not deportable. *Matter of Rainford, supra* (citing and follow-ing *Matter of Rafipour, supra*, for the proposition that once admitted for per-manent residence an alien is not deportable for a prior act, and distinguishing *Matter of V-*, 1 I&N Dec. 273 (BIA 1942), as inapplicable to adjustment of status inasmuch as the alien does not make an entry; *Matter of Gabreylsky, supra; Matter of G-A-, supra; see also Foti v. INS*, 375 U.S. 217 (1963) (treating deportation proceedings as involving a comprehensive adjudication which encompasses the adjudication of ancillary applications for relief from deportation).

No matter what the majority may think Congress meant, they cannot rewrite the statute to preclude from a section 212(c) waiver to overcome admissibility, an alien who is not deportable (on any of the covered grounds) by virtue of being eligible for adjustment of status in deportation proceed-ings. *See West Virginia University Hospitals, Inc. v. Casey*, 499 U.S. 83, 100-102 (1991); *Blanchard v. Bergeron*, 489 U.S. 87, 89 (1989) (Scalia, con-curring) (indicating that citations of particular judicial decisions in legisla-tive history are "unreliable evidence of what the voting Members of Congress actually had in mind"); *see also Matter of Hernandez-Casillas, supra*, at 276 (Vacca, dissenting) (citing *Reed v. United States*, 743 F.2d 481, 484 (7th Cir. 1985), *cert. denied*, 471 U.S. § 1135 (1985), for the rule that where the language is clear, courts are "without the authority to engage in creative writing of a provision").

The majority here pursues the same line of faulty reasoning that we rejected outright when the Immigration and Naturalization Service proposed that who "is deportable" actually should be read to mean "*is excludable and/or* deportable." *Matter of Fuentes-Campos, supra*, at 999. The major-ity's suggestion that it is for the respondent to present affirmative legislative history in support of a reading of the statute which establishes that it extends only to an alien who "is deportable" rather than to all aliens in deportation proceedings stands the process of statutory interpretation on its head. As we stated, Congress prohibited the waiver for an alien "who is deportable." *Id*.

---

obtain the exercise of discretion under sections 212(g), (h), (i), and (k) does not meaningfully change the regulatory scheme applicable to the availability of a concurrent application for a section 212(c) waiver in the context of an application for adjustment of status. *See* 62 Fed. Reg. 10,312, 10,383 (1997) (interim, effective Apr. 1, 1997); *see also* 8 C.F.R. § 212.3 (1997); 62 Fed. Reg. 10,312, 10,369-70, 10,375-77 (1997) (to be codified at 8 C.F.R. §§ 240.11, 240.49) (interim, effective Apr. 1, 1997).

Although that may mean that section 440(d) of the AEDPA "precludes relief for designated aliens in deportation proceedings," it does not preclude relief in deportation proceedings altogether. *Id*. at 909.

Where the statutory language is clear on its face, as here, the inquiry ends and no review of legislative history is necessary. Nor does this reading lead to an unreasonable result, and even if it did, the plain language would control. *Commissioner of Internal Revenue v. Asphalt Products Co., Inc.*, 482 U.S. 117, 1221 (1987); *see also Peabody Coal Co. v. Navajo Nation*, 75 F.3d 457, 486 (9th Cir. 1996).

## B. Treatment of Similarly Situated Persons Seeking Admission

It must be borne in mind that the section 212(c) waiver, as enacted originally, addressed persons returning from abroad to a lawful unrelinquished domicile, and required no equitable considerations to conclude that a waiver was available in connection with an application for adjustment of status, since the posture of an alien seeking adjustment was the same as one seeking to enter. Each must demonstrate admissibility. In this sense the posture of one seeking to adjust his status in deportation proceedings is distinct from that of an alien who we have construed as eligible to seek a waiver nunc pro tunc when he would have been inadmissible at entry.

The alien seeking adjustment must demonstrate admissibility now, whereas the alien seeking a waiver nunc pro tunc must be afforded the benefit of a legal fiction that had she been found inadmissible when seeking readmission as a lawful resident, she could have applied for the waiver then and there. The earlier cases which address the section 212(c) waiver recognize these as separate exceptions to the statutory terms. To the extent that inexact reasoning in precedent cases blurred the distinction between these two situations, they presented a less than accurate description of the legal postures of the respective aliens.

The appeal before us is not about *Francis v. INS, supra*, or *Matter of Silva, supra*. It is not about establishing equitable treatment between a deportable alien who, but for the fact he is sedentary, faces comparable charges and is similarly situated to one who undertook to travel abroad. *See Bedoya-Valencia v. INS*, 6 F.3d 891 (2d Cir. 1993); *Matter of L-*, 1 I&N Dec. 1 (BIA 1942). Indeed, the majority is correct is noting that the "Francis" rationale which we adopted in *Matter of Silva, supra*, involved a discretionary waiver to excludable aliens, and was silent as to deportable aliens whether or not they were similarly situated. It did not involve an express legislative provision as exists in section 440(d) of the AEDPA, expressly barring a waiver for an alien "who is deportable" on certain deportation grounds.

Nevertheless, the majority's analysis is in error. The majority misconstrues *Matter of Smith, supra*, as a case involving the question of equal protection between deportable and inadmissible aliens, later addressed in

*Francis*. In fact, as the Attorney General recognized in *Matter of Hernandez-Casillas, supra*, at 287-88, 290, 291 n. 14, the posture of an alien seeking to establish admissibility in the context of an application for adjustment of status, and that of one who seeks to be admitted under the doctrine of nunc pro tunc applicability are distinct. *See also Matter of Hom*, 16 I&N Dec. 112 (BIA 1977), in which the Board differentiated the *Francis/Silva* doctrine from eligibility to seek a section 212(c) waiver in the context of an application for adjustment of status.

Unlike the *Francis/Silva* line of cases, which relied on equitable considerations between deportable and excludable aliens to extend access to the section 212(c) waiver as it then existed, *Matter of Smith, supra*, is directly on point with the instant case in that it addressed the position of an alien seeking to establish admissibility. Indeed, in distinguishing a nunc pro tunc argument in *Matter of Arias-Uribe, supra*, we quoted *Matter of Smith* for the principle that that there is no valid basis to deny a waiver to an alien seeking adjustment of status who must establish his admissibility, just as any entrant must, on the technical ground that he is not returning to the United States. *Matter of Arias-Uribe, supra*, at 699; *see also Francis v. INS, supra*, at 271.

In any event, it is not necessary for us to address here any issue of equal protection as between an alien who seeks a waiver to overcome excludability and establish admissibility, and one charged for the same offense who requires a waiver to overcome a ground of deportability. The classifications in question are different from those at issue in *Francis*. This case is concerned with equal treatment of aliens, all of whom are seeking to establish their admissibility, including those who apply at consular posts abroad, during inspection and admission at the border or a port of entry, those who file applications for adjustment of status submitted before a district director, and those who file applications for admission through adjustment of status presented before an Immigration Judge in exclusion or deportation proceedings. The only difference between them is the forum in which they seek adjustment of status.

In this regard, the majority's argument not only falls short of the mark, but actually supports the result for which the respondent advocates. Congress was silent about the availability of a section 212(c) waiver in connection with an application for adjustment of status in deportation proceedings. The distinction the majority seeks to impose is not one "created by the statute itself" and the "differential treatment [resulting in] . . . inequality" is not "inherent in the statutory scheme." *Matter of Gonzalez-Camparillo*, *supra*, at 942. It is "wholly irrational." *Yeung v. INS*, 76 F.3d 337 (11th Cir. 1996); *see also Garberding v. INS*, 30 F.3d 1187 (9th Cir. 1994); *Francis v. INS, supra*.

It is a basic canon of statutory construction that where we can interpret a statute so as to avoid any constitutional infirmity, we should do so. *United States v. Witkovich*, 353 U.S. 194, 199 (1957). Although we may not rule upon the constitutionality of the statutes we apply in our adjudications,

*Matter of Cenatice*, 16 I&N Dec. 162 (BIA 1977), we are not foreclosed from construing a statute so as to avoid a constitutional question or to comport with constitutional concerns. We should do so and consider the application of an alien who seeks admission and requires a waiver of inadmissibility.

## V. CONCLUSION

The interpretation relied upon by the majority violates not only the express language of the statute and the principle of statutory construction that silence is not presumed to be accidental, but our own precedent. At the same time, it creates a potential constitutional infirmity in calling for different treatment between qualified lawful permanent resident aliens who need a section 212(c) waiver to overcome excludability and establish admissibility. The respondent is seeking adjustment of status anew, which requires that he establish that he is not excludable, and he is entitled to apply for and to be granted a waiver of inadmissibility under section 212(c) of the Act in conjunction with his application.